· (No. 14414.—Judgment affirmed.)

The Chicago, Burlington and Quincy Railroad Company, Appellee, *vs.* Lillie Abens, Appellant.

*Opinion filed December 19, 1922.*

1. Plats—*the title of a lot owner extends to the center of the street in a common law plat.* In a common law plat the title of a lot owner extends to the middle of the street, subject to the public easement.

2. Same—*when plat is incorporated in petition for condemnation.* Where the property to be taken by eminent domain is described in the petition by lot and block number of the original town plat, the plat is incorporated in the petition as fully as if it had been copied therein.

3. Municipal corporations—*when ordinances for elevation of railroad and acquisition of new street must be construed together.* Where the elevation of railroad tracks in a public street makes necessary the acquisition of a new street or some other provision for public use and convenience, the ordinance for the track elevation must be construed with a subsequent ordinance for the acquisition of a new street as if all the terms of each were included in a single ordinance.

4. Same—*operation of railroad track in public street is a legiti-. mate use of the street.* The maintenance of railroad tracks in the streets of a city and the operation of cars over them are legitimate uses of the streets, and the city has power to require railroad companies to elevate their tracks in streets and alleys, and for this purpose may vacate, close or permanently obstruct such streets and alleys.

5. Same—*when track elevation ordinance does not vacate the street.* An ordinance requiring a railroad company to elevate its tracks, and permitting it, in order to comply with the ordinance, to obstruct portions of a street for its full width, does not cause a diversion of the street from the purpose of its dedication or impose an additional servitude on the street, nor does it vacate the street so as to cause a reversion of the fee to the original owner,

even though the ordinance declares the streets and alleys under the elevated road-bed and tracks discontinued and vacated.

6. Eminent domain—*when lot owner is not entitled to compensation based on title to center of street.* Where an ordinance for the elevation of railroad tracks in a public street does not vacate the street, in a condemnation proceeding by the railroad company to make the improvement and to build additional tracks an abutting lot owner is not entitled to have her compensation based on the theory of ownership to the center of the street, free from the public easement.

7. Same—*obtaining frontage petition is not a condition precedent to condemnation proceeding by railroad company.* While a city council has no power to grant the right to lay railroad tracks in a public street except upon a petition of the owners of the property representing more than one-half of the frontage, the obtaining of such a petition or of the consent of the council is not a condition precedent to a condemnation proceeding by the railroad company, as such consent can be obtained after the condemnation as well as before.

Appeal from the County Court of Kane county; the Hon. S. N. Hoover, Judge, presiding.

· Frank G. Plain, John M. Raymond, and John K. Newhall, for appellant.

Alschuler, Putnam & Flannigen, (J. A. Connell, of counsel,) for appellee.

Mr. Justice Dunn delivered the opinion of the court:

On March 23, 1914, the city council of the city of Aurora passed an ordinance requiring the Chicago, Burlington and Quincy Railroad Company to elevate its tracks in LaSalle street between Main and New York streets, and elsewhere, and to change their location in some places. Thereupon the Public Utilities Commission entered an order requiring the railroad company within five years to construct its main line tracks through the city on an embankment on a changed location in accordance with the terms of

the ordinance. In compliance with the ordinance and the order of the commission the railroad company filed its petition in the county court of Kane county for the condemnation of the following described property: All that part of lot 5 in block 6 of the original town of Aurora lying easterly and southerly of the following described line: Beginning at a point in the northeasterly line of Main street that is 34.04 feet southeasterly from the southwesterly corner of said lot, measured along said northeasterly line of Main street; thence northeasterly in a straight line to a point in the northeasterly line of said lot that is 50.01 feet southeasterly from the northwesterly corner of said lot, measured along said northeasterly line of said lot, said northeasterly line being also the northeasterly line of an alleyway as now located. A trial resulted in a verdict fixing the value of the land taken at $9800, and a judgment was rendered authorizing the railroad company to take possession of the property upon payment of that amount, from which Lillie Abens, the owner of the property, appealed.

LaSalle street runs northeast and southwest and is crossed at right angles by Main and New York streets, the latter being the next street north of the former. Lot 5 in block 6 is at the intersection of Main and LaSalle streets and has been owned by the appellant for more than thirty years. It fronts 54½ feet on the northeast side of Main street and extends northeast on the northwest side of La-Salle street 120 feet. LaSalle street is 66 feet wide and Main street 80 feet. For more than thirty years the railroad company has maintained and operated two tracks in LaSalle street on the surface of the street opposite lot 5, the appellant's property. The elevation ordinance required the railroad company to elevate these tracks, and authorized it to construct, maintain and operate such number of tracks as it might from time to time deem necessary or convenient for the transaction of its business upon its right of way and any new or additional right of way it might acquire,

and to carry all such tracks over all intervening streets and alleys, all within the limits, however, of the length of the subways and viaducts at the several streets, as "provided in the ordinance. The ordinance further provided in section 12 that that part of LaSalle street lying between New York street and Main street, except that portion lying westerly of a line drawn from a point in the southerly line of New York street 40.83 feet westerly from the east line of LaSalle street to a point on the west line of LaSalle street 189.51 feet from the south line of New York street, was to be vacated, and section 13 required the railroad company to procure to be dedicated for use as public streets all the property described as follows: "All that part of lots one (1), two (2), three (3), four (4) and five (5) in block six (6) in the original town of Aurora, described as follows: Beginning at a point in the northerly line of said lot one (1) three and ten one-hundredths (3.10) feet westerly from the northeast corner thereof; thence southerly in a direct course to a point on the southerly line of said block six (6) fifty-four and twenty-one one-hundredths (54.21) feet westerly from the southeasterly corner of said block six (6); thence easterly along the south line of said block six (6) to a point twenty-eight (28) feet easterly from, measured at right angles to said first described course; thence in a northeasterly direction parallel to and twenty-eight (28) feet easterly from said first described course to a point in the easterly line of said block six (6), original town; thence northerly along the easterly line of said block six (6) to the northeast corner of lot one (1) aforesaid; thence westerly along said north line of lot one (1) three and ten one-hundredths (3.10) feet to the place of beginning." The ordinance also required all the expense to which the city might be put in acquiring such property for street purposes to be borne by the railroad company.

In June, 1916, the city council passed an ordinance for the establishment of a street to be known as North LaSalle

street, over a strip of ground 28 feet wide immediately adjoining and northwest of the tract sought to be taken by the railroad company. On June 6 the city of Aurora filed in the county court of Kane county a petition for the condemnation of this strip for a street. This petition was still pending at the time of the trial of the railroad company's petition.

It was proposed by the railroad company to elevate the two tracks already existing in LaSalle street opposite lot 5, the appellant's property, and to construct three additional tracks immediately contiguous to them. All were to be elevated 19 feet above the original level. The elevated structure was to be built upon columns placed in rows at right angles to the structure, one row for each track, with an intervening space of from 13 to 19 feet between rows. The five tracks contemplated require an elevated structure of the width of 62 feet, and it was to secure the additional ground necessary for this purpose that the railroad company sought to condemn the appellant's property adjoining the street upon its northwest side. The part of lot 5 proposed to be taken was a trapezoid adjoining the northwest side of LaSalle street, along which it extended 120 feet, its west end being 25.98 feet wide on Main street and its east end 9.89 feet wide. The elevated structure in LaSalle street, with its rows of columns, would necessarily interfere with the public use of the street, and the ordinance was accordingly passed for the laying out of North LaSalle street on the strip of ground 28 feet wide immediately adjoining on the northwest the trapezoid proposed to be taken by the railroad company. This strip was also a part of lot 5, was owned by the appellant, and the petition for its condemnation for a street was filed in the name of the city of Aurora at the same time as the petition of the railroad company was filed. The elevation ordinance required the expense of this proceeding to be paid by the railroad company.

.

The appellant insisted on the trial that the elevation ordinance operated to vacate that portion of LaSalle street contiguous to her property, and that the allegation of the appellee's petition that the appellant was the owner of the property was conclusive against the appellee that the appellant was the owner of the property, including the half of LaSalle street which was contiguous to it, free from any easement of public user, and it is now argued that the court erred in not sustaining these contentions. The plat of the original town of Aurora shows lot 5 in block 6 abutting on the northwest side of LaSalle street. It is a common law plat, and therefore the title of the lot owner extends to the middle of the street, subject to the public easement. The petition described the property to be taken as all of lot 5 in block 6 in the original town of Aurora easterly and southerly of a designated line, and thereby incorporated the plat of the original town of Aurora in the petition as fully as if it had been copied into the petition. (*Trustees of Schools* v. *Schroll*, 120 Ill. 509; *Mendel* v. *Whiting*, 142 id. 348.) It thus appeared from the petition, when the plat is considered in connection with it, that the property described was subject to an easement for a public street.

This brings us to the question whether the part of La-Salle street opposite lot 5 was vacated by the elevation ordinance. As has been stated, section 12 declared the part of the street in question to be vacated, and if it were the only section in the ordinance would sustain the appellant's contention. The ordinance, however, contained many other sections, which show that it was not the intention of the city council to abandon the public use of the street as a highway but only to regulate the use. The elevation of the tracks required the construction in the streets of a foundation to carry the tracks, and the plans of the proposed work introduced in evidence show that the elevated structure in the street would greatly obstruct the passage of vehicles in the street and render its use unsafe to the public, if not im-

practicable. To meet this condition and obviate the public inconvenience and danger an ordinance was passed establishing a different street to provide for the travel between Main and New York streets. This ordinance was not passed until two years after the passage of the elevation ordinance, but during this time nothing was done under the elevation ordinance. The ordinance establishing the new street was passed in June, 1916, and the petition of the railroad company and that of the city for condemnation were both filed June 9, 1916. The elevation ordinance and the street ordinance each referred to the other, and it is clear that they were parts of the single plan for the elevation of the railroad tracks. The acquisition of the new street was an incident of the elevation which made necessary the regulation of the use of the whole street in such a way that it could not be safely and conveniently used by the general public but required some other provision for the general public use. Neither ordinance would have been passed without the other, and they must be construed as if all the terms of each ordinance were included in a single ordinance. *Ligare v. City of Chicago,* 139 Ill. 46; *Ligare v. Chicago, Madison and Northern Railroad Co.* 166 id. 249.

It has long been settled in this State that the maintenance of railroad tracks in the streets of a city and the operation of cars over them are legitimate uses of the streets and that the city has power to require railroad companies to elevate their tracks in streets and alleys, and for this purpose may vacate, close or permanently obstruct such streets and alleys. It is unnecessary to repeat here the reasoning by which the conclusion was reached that an ordinance requiring a railroad company to elevate its tracks, and permitting it, in order to comply with the ordinance, to obstruct portions of a street for its full width, does not cause a diversion of the street from the purpose of its dedication or impose an additional servitude on the street, and does not vacate the street so as to cause a reversion of the fee

to the original owner, even though the ordinance declared the streets and alleys under the elevated road-bed and tracks discontinued and vacated. The question was fully considered and discussed and the conclusion stated was reached in *Weage* v. *Chicago and Western Indiana Railroad Co.* 227 Ill. 421, which cited previous decisions; and the same doctrine has been announced in similar cases in which the circumstances were somewhat varied, in *People* v. *Grand Trunk Western Railway Co.* 232 Ill. 292, *Shrader* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 242 id. 227, *People* v. *Pittsburg, Fort Wayne and Chicago Railway Co.* 244 id. 166, and *Murphy* v. *Chicago, Rock Island and Pacific Railway Co.* 247 id. 614.

The appellant cites *Sullivan* v. *Atchison, Topeka and Santa Fe Railway Co.* 251 Ill. 108, as authority for the proposition that upon the passage of the elevation ordinance the appellant became the absolute owner in fee of the west 33 feet of LaSalle street contiguous to her property. In that case a bill was filed for a mandatory injunction requiring the railroad company to remove so much of a concrete wall in VanBuren street as lay south of the west 79 feet of lot 5 in block 14 in the city of Joliet, which the complainant owned, fronting south on VanBuren street. The city council had passed an ordinance requiring the railroad company to elevate its tracks and vacating and closing to public travel that part of VanBuren street occupied by the concrete wall. This wall was a solid structure erected across the street from one side to the other to enable the road to cross this street with its elevated tracks, and in the ordinance there was an unconditional vacation of the street at that point. There was a complete obstruction of the street for the ordinary and usual purpose of a street, and it was held that this was not a change in the mode of using VanBuren street but the intention was to close the street at this point completely and totally abandon VanBuren street in front of the complainant's lot. The court in its

opinion cited *Weage* v. *Chicago and Western Indiana Railroad Co. supra,* and *People* v. *Pittsburg, Fort Wayne and Chicago Railway Co. supra,* and approved them, distinguishing them on the ground that the decisions in those cases rested on the proposition that the use of a street longitudinally for elevated railroad tracks is simply a change in the method of using the street and not an abandonment of it as a public highway. It is said that the principle on which those decisions rested was undoubtedly sound but did not apply to the situation then under consideration.

The ordinance did not vacate LaSalle street, and the appellant was not entitled to have her compensation assessed on the theory that she owned any part of LaSalle street free from the public easement. Her counsel contend that the building of the three additional elevated tracks would be equivalent to constructing a new railroad, and that the correct question for determination by the court was whether or not the strip of land between the existing railway track and the west line of LaSalle street was to be considered as of the same character, so far as compensation was to be determined, as the remainder of appellant's property located westerly from what was formerly the west line of LaSalle street. The court held properly that no part of LaSalle street was to be considered of the same character, so far as compensation was to be determined, as the property west of LaSalle street, but all the street was subject to the easement of the public street.

The appellee was permitted to ask witnesses the value of the property taken, assuming appellant to be the owner in fee to the center of Main and LaSalle streets subject to the right of public user. The questions were objected to as not proper proof of the fair cash market value of the property proposed to be taken. It is argued that the questions were misleading, in that it was not clear whether they meant public user for use as a street, or public user so far as use by the railroad was concerned. The witnesses were prop-

erly allowed to answer the questions. They were cross-examined fully as to what they meant by public user, and the questions could not have been misleading.

Objection is made to an instruction which submitted to the jury as a question of fact whether there was a vacation of the street. The instruction should not have been given, but since it is held that there was no vacation, the appellant, who was insisting there was one, was not injured by the submission of the question to the jury as one of fact.

The appellant contends that the elevation ordinance is void because it authorized three additional tracks along La-Salle street, and the city council was without power to grant this authority because no frontage petition for that purpose was ever presented to the city council, and that therefore the court should have sustained the appellant's motion to dismiss the petition. Paragraph 90 of section 1 of article 5 of the Cities and Villages act provides that the city council shall have no power to grant the right to lay down railroad tracks in any street except upon a petition of the owners of the land representing more than one-half of the frontage of the street or so much thereof as is sought to be used for railroad purposes. Where the consent represented by such a petition has not been obtained the city is without power to grant the right to lay railroad tracks in the street. (*McGann* v. *People,* 194 Ill. 526.) The authority to exercise the right of eminent domain, however, is derived wholly from the State and not from the city, and obtaining the consent of the council to laying a railroad track in any street is not a condition precedent to proceedings to condemn. Such consent could be obtained after the condemnation as well as before. (*Metropolitan City Railway Co.* v. *Chicago West Division Railway Co.* 87 Ill. 317; *Suburban Railroad Co.* v. *Metropolitan Elevated Railroad Co.* 193 id. 217; *Dowie* v. *Chicago, Waukegan and North Shore Railway Co.* 214 id. 49.) So where the approval of the Public Utilities Commission was necessary to the validity of a con-

tract between two railroad companies for a joint use of a cut-off, it was not necessary that the contract should have been made or the consent and approval of the Public Utilities Commission obtained before the exercise of the right to condemn land for the railroad tracks. *Chicago, Milwaukee and St. Paul Railway Co.* v. *Franzen,* 287 Ill. 346.

The judgment of the county court will be affirmed.

*Judgment affirmed.*