(No. 27077.—

HENRY S. ABENS *et al.,* Appellants, *vs.* CHICAGO, BURLINGTON AND QUINCY RAILROAD COMPANY *et al.,* Appellees.

*Opinion filed November 22, 1944.*

FULTON, C.J., took no part.

PLAIN & PLAIN, (JOHN G. PLAIN, of counsel,) both of Aurora, for appellants.

RALPH C. PUTNAM, of Aurora, SIDNEY F. BLANC, of Chicago, FRANK R. REID, JR., Corporation Counsel, VANCE McKAY, City Attorney, and WING & PUKLIN, all of Aurora, for appellees.

Mr. JUSTICE MURPHY delivered the opinion of the court:

This is an appeal from a judgment entered in the circuit court of Kane county in an action in ejectment started by plaintiffs-appellants to eject the Chicago, Burlington and Quincy Railroad Company, (herein referred to as defendant,) and its lessees from a part of lot 5, block 6, of the original town plat of the city of Aurora. They also asked for an accounting of the rents, issues and profits received by defendant during its occupancy. The cause was tried before the court without a jury and resulted in a judgment in favor of defendant on the ejectment action and a dismissal of the action for accounting.

Lot 5 extends northeasterly and southwesterly, and the part in controversy is approximately 25.96 feet in width

at its southerly end, 9.99 feet at the northerly end, and about 137 feet in length. Prior to 1921, it was a part of lot 5, and Lillie Abens, mother of plaintiffs, owned all of the lot. Upon her death, plaintiffs succeeded to her interest by descent, or will. In the original town plat, lot 5 was bounded on the easterly side by La Salle street and the southerly end by Main street. In 1921, that part of lot 5 which is in question was the subject of a condemnation proceeding brought by the defendant railroad company. For convenience the tract in question will be referred to as tract A. The then owner, Lillie Abens, contested the eminent domain proceeding and filed an answer and cross petition claiming damages for the part of the lot not taken. The owner appealed to this court, where the judgment fixing damages was affirmed. *Chicago, Burlington and Quincy Railroad Co.* v. *Abens,* 306 Ill. 69.

The purpose of the eminent domain proceeding was to acquire right-of-way space upon which defendant might elevate its railroad tracks. The project as planned in 1921 called for the construction of five elevated main-line tracks through the city of Aurora. The elevated structure which was to furnish the support for three of the main tracks was to be located within the boundaries of what was La Salle street as originally platted. Questions pertaining to the owners' interest in one-half the street opposite lot 5 were considered in the former case. A fourth track was located in part of tract A and part in La Salle street. The other track, the one to the north, entered tract A at its easterly end and extended its entire length. The three tracks located within the boundaries of La Salle street were completed and are now in use. The other two have not been constructed.

Defendant paid the damages fixed by the eminent domain proceeding in February, 1923, and went into exclusive possession of tract A. Since then it has leased the tract to various tenants; a part for billboard purposes, a

part for an automobile parking lot and a narrow strip to the city of Aurora for the widening of a public street.

Plaintiffs contend that the rights which defendant acquired in the tract were limited to an easement to enter upon it and use it for its elevated structure, and that they, as owners of the fee burdened with the easement, have the right to use it for all other purposes which do not obstruct or interfere with defendant's rights.

It is argued that plaintiffs have the right to the exclusive use of tract A until such time as defendant erects the structure thereon, and that thereafter they have the right to use the space between the concrete columns. Plaintiffs also contend that defendant's failure to make use of the easement on tract A for the purposes for which it was condemned has, in effect, amounted to an abandonment of it by defendant. Defendant relies upon the rights it acquired in the eminent domain proceeding and contends that all claims plaintiffs are now making were adjudicated and determined by that proceeding.

The plans showed that the structure proposed to be erected on tract A was substantially the same as the one proposed for the tracks which were later completed and are now located on the original La Salle street area. It was to consist of a concrete slab placed about 14 feet above the ground on three lines of concrete columns. Such columns were approximately three and one-half feet in diameter and to rest on bases six feet square. The columns were to be spaced about 20 feet apart from center to center.

The petition filed in the eminent domain proceeding sought tract A for right-of-way purposes. The plans and specifications introduced in evidence in that case, and a part of the record in this cause, show the character of the improvement, its location on tract A and detailed specifications as to the structure contemplated. There is

no allegation in the petition or anything contained in the plans that in any way indicates that defendant sought to acquire anything less than an easement which would permit it to use the whole of the surface for purposes of constructing its elevated tracks thereon. The judgment entered ordered that the defendant should pay the amount of the verdict ($9800) to the county treasurer of Kane county within sixty days from the date of the judgment and within ten days from the date of payment Lillie Abens should "vacate and surrender said premises so taken and appropriated in this proceeding unto the said petitioner and that the said petitioner, Chicago, Burlington and Quincy R. R. Company, upon the expiration of said period of ten days * * * be let into the possession of said lands * * * and that the said petitioner have, hold and use the said lands taken and appropriated in this proceeding for railroad purposes and uses and for the purpose of constructing thereon an elevated structure in substantial compliance with petitioner's exhibit A filed herein, upon which the tracks of said petitioner shall be laid."

Section 13 of article II of the constitution provides that "the fee of land taken for railroad tracks, without consent of the owners thereof, shall remain in such owners subject to the use for which it is taken." Therefore, the defendant in this case acquired, in the eminent domain proceeding, an easement over tract A, and the fee subject to the easement remained in the owner Lillie Abens. The plaintiffs as the present owners of the fee may use the land for every purpose not incompatible with the use for which the easement was created (*Chicago and Eastern Illinois Railroad Co.* v. *Clapp,* 201 Ill. 418,) but as to all rights attendant to the easement, those of the defendant are superior to those of the plaintiffs. The scope of the use which defendant may make of the tract is limited to such as are essential to enjoy the uses and purposes for

which it was condemned. *City of Chicago* v. *Lord, 277 Ill. 397; Jacksonville and Savanna Railroad Co.* v. *Kidder,* 21 Ill. 131.

It is necessary to determine whether plaintiffs' possession, which they seek to assert by this proceeding, would be compatible with the rights defendant has by virtue of its easement. As stated, there is nothing in the pleadings, judgment order, evidence or parts of the record of the eminent domain proceeding which indicates that defendant acquired rights less than those usually accompanying an easement granted in a condemnation suit for right-of-way purposes.

The rule in this State is that an easement acquired by a railroad company in an eminent domain proceeding for right-of-way purposes gives the company the right to the exclusive possession of the land taken. *Illinois Central Railroad Co.* v. *Houghton,* 126 Ill. 233, was an ejectment action brought by the railroad company to recover two certain strips of land which had been occupied by the railroad company for right-of-way purposes under a deed which conveyed but an easement. In discussing the nature of the title acquired, the court quoted, with approval, from *Jackson* v. *R. and B. Railroad Co.* 25 Vt. 160, as follows: "The railway company must, from the very nature of their operations, in order to the security of their passengers, workmen, and the enjoyment of the road, have the right at all times to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy by the former owners in any mode and for any purpose." In *Illinois Central Railroad Co.* v. *Godfrey,* 71 Ill. 500, it was said, "that the right of way was the exclusive property of the company upon which no unauthorized person had a right to be, for any purpose."

In the early case of *Chicago and Mississippi Railroad Co.* v. *Patchin,* 16 Ill. 198, the distinction between an ease-

ment for railroad right-of-way purposes and an easement over lands for other purposes was noted. In the *Patchin case,* it was said: "I presume the right to the land upon which railroads are built, is not strictly analogous to the easement of the public in highways, leaving the fee in the owner of the soil, but is an absolute ownership in fee for railroad purposes, * * *." Reference is made to this case in the opinion in the *Houghton case,* where it was said: "While we are not disposed to hold that the deed from Walker to the plaintiff conveyed to the plaintiff an estate in fee in the right of way, it is clear that it conveyed an estate which, so far as the right of possession for railroad purposes is concerned, had most of the qualities of the fee. The right of possession thereby conveyed was exclusive, and was wholy inconsistent with the subsequent possession of the land or any part of it by the grantor or his assigns for purposes of grazing or agriculture, or as a part of the farm to which it originally belonged."

The cases referred to involved rights on rights of way where tracks were at grade, but the fact defendants' tracks were to be on an elevated structure does not furnish a reason for the application of a different rule. The same public interest is to be served and the same high degree of care is required. It may be that it would be possible for defendant to operate its trains over the elevated structure for periods of time without going underneath for inspection, repair, or to attend to things essential to its maintenance, but there would be times when such would be necessary. Such use would be the exercise of a right attached to the easement and it is clear that the exercise of such a right would be incompatible with the possession which plaintiffs seek.

Plaintiffs cite cases such as *Eldorado, Marion and Southwestern Railroad Co.* v. *Sims,* 228 Ill. 9, and *Cleve-*

*land, Cincinnati, Chicago and St. Louis Railway Co.* v. *Central Illinois Public Service Co.* 380 Ill. 130. In the first case cited, the question pertained to the right of an owner of the fee of a strip of land used as a railroad right of way to remove coal therefrom. The rule announced was that the owner of the fee had the right to connect the coal on either side of the right of way by tunnels under the right-of-way strip, provided that in so doing there was no impairment of the support to the surface. In the *Public Service case,* the question related to the right of a public service company to extend its transmission lines over and above a right of way in which a railroad company held an easement. The rule announced was that the public service company might extend its transmission lines over and above the right of way, provided the height was sufficient to permit the railroad company the free exercise of all its rights which were incident to its easement. The rule announced in the instant case is not in conflict with these cases for the reason that if plaintiffs enter upon tract A, they would be in possession of the same area as defendants but for an entirely different purpose. In the *Sims* and the *Public Service cases* and others involving the same principle, the right of the railroad companies to the exclusive possession of the surface is preserved. The possession of the owner of the fee to the coal tunnels beneath the surface or his possession of the space above the surface for transmission lines in no-way conflicts with the railroad company's right to the exclusive possession of the area where the railroad is operated.

Plaintiffs rely upon what was said in *City of Chicago* v. *Lord,* 276 Ill. 571, as controlling here. That was an eminent domain proceeding instituted by the city of Chicago to condemn property for the purpose of widening Twelfth street and constructing a viaduct thereon. The property involved on the appeal was owned by a railroad company

and the issues were as to the elements of damage to be considered in fixing the compensation to be paid. Reference is made to the right of the railroad company to use the space beneath the viaduct as a means of access to its warehouses which fronted on Twelfth street. The provision of a contract between the city and several railroad companies, including appellant, were considered and rights thereunder declared. Anything that was said in that case in reference to the use of the space beneath the viaduct was in accord with the contemplated use the city was to make of such space. It appears that the project proposed made provision for the use of the surface of the street as a public thoroughfare. The project proposed in the eminent domain proceeding as to tract A did not provide that the railroad company would share possession of the tract condemned with the owner of the fee. If it had been so provided, it would be binding upon the company thereafter. The defendant acquired the right in the eminent domain proceeding to have the exclusive possession of tract A.

Plaintiffs' final contention is that they are entitled to an accounting for rents even though defendant had the right under the eminent domain proceeding to the exclusive possession. The argument advanced in support thereof involves two conditions, first, that the defendant has abandoned the tract and that plaintiffs' title is no longer encumbered by the easement, and that the railroad company's right of user was limited to railroad purposes and that leasing for erection of billboards and parking lots are not related directly or indirectly to the railroad business.

In *Chicago and Eastern Illinois Railroad Co.* v. *Clapp,* 201 Ill. 418, in considering whether the railroad company had abandoned a right-of-way strip, it was held that to constitute an abandonment there must be not only an actual relinquishment of the property but an intention to abandon it, and that the intention of the party whose rights

are alleged to be abandoned is the important fact to be ascertained.

The evidence in this case shows that when the three south tracks were elevated, defendant constructed the foundation for the subway at Main street immediately south of tract A, and that it extends on to this property a few feet and at such points the base is completed for the erection of the columns. The superintendent for the Aurora division testified that traffic conditions on this division required the additional tracks. There is no evidence which tends to prove that defendant has intended to abandon its use of tract A for railroad purposes. Proof of mere non-user is not sufficient, especially where a tract is such an integral part of a project that cost several million dollars to construct.

Plaintiffs are not entitled to an accounting of rents. Defendant could not exercise the power of eminent domain to acquire property for parking lots or billboard space, purposes which are not related to its business as a common carrier, and we do not intend to hold that defendant may continue to hold the property for an indefinite period for such purposes. However, in view of the size of the project proposed, and the purpose to be accomplished, we do not believe that defendant can be said to have forfeited its rights in tract A. A railroad company has the right to lease its property which is not needed immediately in its business.

The judgment of the circuit court of Kane county was correct and is affirmed. *Judgment affirmed.*

Mr. CHIEF JUSTICE FULTON took no part in the consideration or decision of this case.