(No. 19668.—

Israel Joseph, Appellee, *vs.* Arthur R. Evans, Exr., *et al.*
Appellants.

*Opinion filed December 20, 1929—Rehearing denied Feb. 11, 1930.*

THEODORE WORCESTER, MAURICE F. LORD, and D. W. COCKFIELD, for appellants.

LEONARD C. MEAD, and ROBERT L. KEMLER, (FRANKLIN J. STRANSKY, of counsel,) for appellee.

Mr. JUSTICE SAMUELL delivered the opinion of the court:

At the May term, 1924, of the circuit court of Kane county, appellee, Israel Joseph, filed his bill in equity to remove clouds and quiet title to certain real estate. Arthur R. Evans, individually and as executor of the last will of Henry H. Evans, deceased, and the Barber-Greene Company, a corporation, were made defendants. Appellee in his bill asserts he is owner of fifty-one lots in the city of Aurora, particularly describing them, having obtained title in January, 1923, by a master's deed issued pursuant to a decree in foreclosure of the circuit court of Kane county wherein the Continental and Commercial Trust and Savings Bank was complainant and the Chicago, Aurora and DeKalb Railway Company (hereinafter referred to as the railway company) and others were defendants; that on January 1, 1905, the Aurora, DeKalb and Rockford Electrict Traction Company (hereinafter referred to as the traction company) entered into an oral agreement with Henry H. Evans, now deceased, the father of Arthur R. Evans, for the purchase of the property, whereby Evans agreed to convey the premises to the traction company and the latter

agreed to and did deliver two hundred shares of its common stock to Evans, but that Evans "neglected" to execute the deed; that the traction company took possession of the premises and constructed its railroad across the premises, built side-tracks, station, freight shed, etc., all of which was known to Evans; that thereafter, on January 1, 1909, the traction company was re-organized under the name of the railway company and all its property was conveyed and became the property of the railway company; that Evans knew such facts; that in September, 1910, the officers of the railway company, being ignorant that Evans had already sold and received pay for the premises, entered into a new oral contract with Evans whereby he paid to the railway company $82,500 in cash and received therefor $100,000 worth of bonds and $100,000 in stock of the company; that $82,500 of the stock was a bonus and the remaining $17,500 in stock was intended as full payment and settlement for the premises described in the bill, and that Evans agreed to execute and deliver a deed to the premises but that he has failed and refused to do so; that Henry H. Evans died testate about the year 1917, leaving Arthur R. Evans, one of the appellants, sole executor and sole residuary devisee and legatee; that Arthur had full knowledge of the agreement and became the owner of stocks and bonds of the railway company and as such owner participated in the distribution of the assets of the company after foreclosure proceedings, receivership, etc.; that Arthur fraudulently assumed and claimed title to the premises and fraudulently sold to the Barber-Greene Company certain lots particularly described in the bill and said company fraudulently assumed title and control over the same; that appellee is the owner of the premises by virtue of the master's deed, and that he and his successive grantors have had notorious, hostile, adverse, continuous, peaceable and exclusive possession and control of the whole of the premises for more than thirty years last past and have paid all taxes

levied against the same. The bill prays that complainant's title be quieted as to all the property. After demurrers were overruled all defendants answered severally, denying all the material allegations and calling for strict proof and pleading the Statute of Frauds and *laches*. After hearing, a decree was rendered in favor of appellee, and appellants have appealed.

Complainant's evidence to support the allegations of the bill was given by six witnesses. The following is a synopsis of the negotiations leading up to the alleged purchase:

J. H. Bliss, aged seventy-eight, a farmer by main occupation, became a stockholder, director, chairman of the executive committee, vice-president and later president of the railway company when its charter was issued, in 1909. He stated he had something to do with obtaining "right of way grounds" in September of 1910. When asked by complainant's solicitor if he had anything personally to do with obtaining the "right of way over the property described in this bill—over the lots described," he replied, "Well, yes." He stated he and W. E. George had an interview with H. H. Evans in the latter's office in Aurora in the month of September, 1910; that it was there agreed the railway company was to deliver $100,000 of its bonds and $100,000 in stock to Evans, and the latter agreed to pay $82,500 in cash and "was to settle for the right of way and other matters," and the meeting then broke up; that in October, 1910, Bliss, Ravlin, Klein, president of the bank, and Evans, met at the bank; that the latter paid $82,500 in cash and the stock and bonds were delivered to him. Evans asked Ravlin and Bliss if the deed for the property to be acquired by the railway company was ready for execution, and they told him they had no description of it. Bliss said he would order a survey and plat, with a proper description of the property, and have it ready to incorporate in a deed to be signed by Evans at a later date. Bliss employed an engineer to make the survey and plat. It

was not prepared until about May of 1911, according to the exhibit so introduced. Bliss claimed that the difference between $82,500 and $100,000, or $17,500, was payment for "right of way and other matters." Evans asked Bliss some few weeks later if he had the deed ready, and Bliss said "No." Later Evans asked Bliss if he had not procured a description, and when Bliss said that he had not, Evans said, "You had better get it, because you can't tell what may happen and it may cause you a good deal of trouble later, and while you are about it get all you want." Bliss, on cross-examination, admitted a deed had been finally prepared and that there was considerable discussion with Evans about it and that Evans never signed the deed. Bliss says he does not recall whether Evans "refused to sign" but admits that Evans wanted $25,000 more in cash, but since Bliss had no authority to pay such sum the negotiations were ended. The witness admitted some of the bonds of the company were sold below par to other parties and that the stock was given more or less as a bonus with the sale of all bonds. The witness never referred to the title of the lots but always to a "right of way." He pointed out on the exhibit lots 1, 2, 3 and 4 in block 13 of Hoyt's Third addition as being the location of the car barns, but admits that he did not understand Evans owned that property; that these lots were purchased from Joy Morton and not from Evans.

W. E. George, president of the Old Second National Bank of Aurora, although present at the conversation between Bliss and H. H. Evans in the latter's office in Aurora in 1910, is silent as to the agreement between them. His testimony is devoted to the location of the buildings and tracks of the railway company. He does not strengthen the evidence as to any agreement between Evans and the company for the purchase of the real estate.

Neither does the testimony of Peter Klein and John C. Weiland have any bearing on the character of the contract

between Evans and Bliss. F. W. Ravlin, a banker of Aurora and a stockholder and treasurer of the railway company, was not present at the conversation between Bliss and Evans in the latter's office but says he was at the bank when the money was paid and the stock and bonds were delivered to Evans; that in the meeting Evans asked if the deed had been prepared, and when he was told it had not, it was suggested that Bliss have the property surveyed and described so that a deed could be made up. His testimony does not disclose any conversation or agreement as to the number of lots or whether an easement or fee title was to be conveyed. On two or three subsequent occasions Evans asked him about the deed, and at one time remarked that the company should take all it wanted. He likewise locates, in a general way, the buildings and tracks.

Israel Joseph, the appellee, says that he was in the scrap-iron business and that he obtained a master's deed from the receiver in 1923. The deed does not specify the land described in the complainant's bill but merely conveys to the complainant all the real and personal property of the railway company. On the morning after the delivery of the deed he says he took possession of the property by placing a man in charge of the property. He was there about a year. He is not sure as to the number of lots on which the buildings and personal property of the railway company were located. The record shows that a few lots have buildings on them, and in many instances the track only touches a very small part of the lots described.

The appellant the Barber-Greene Company, by its superintendent and president, shows that a building 90 feet by 360 feet was erected on a part of property described in the bill and deeded to it in the year 1920; that the building cost $40,000, and is constructed of steel, concrete and wood; that neither the railway company nor appellee has ever protested the company's occupancy or possession except by the bill to quiet title.

The record title to the lots in question is admittedly in appellants, and appellee by his bill sought to establish ownership upon two theories. He first claims an oral agreement made in 1905 between the owner, Henry H. Evans, and the traction company, whereby Evans agreed to convey the land to the traction company, and a later oral agreement between Evans and the railway company, made in September, 1910. Secondly, he claims a twenty-year limitation title by adverse, hostile, continuous, etc., possession. There is a complete failure of proof to support the latter theory, for the reason that the longest possible period of possession prior to the filing of the bill was less than twenty years. The record shows the traction company built a switch-track about 1906 or 1907, and there is no proof whatever of any possession prior to that date. The bill in this case was filed May 9, 1924, so the alleged possession could not have been for more than eighteen years. No proof is adduced to support the claim of appellee that an oral agreement between the traction company and Evans was made in 1905, as alleged in the bill, and he has apparently abandoned that claim.

This brings us to the consideration of the alleged oral agreement between Evans and the railway company in September, 1910. In support of the contention that such agreement was made, appellee produced two witnesses, Bliss and Ravlin, who, as officers of the railway company, negotiated the agreement. The record is silent as to what land was to be conveyed under this agreement. Bliss admits a deed was prepared and submitted to Evans but that the latter refused to sign because he wanted $25,000 in cash. The record is silent as to what land was to be conveyed and also as to the quantum, and whether there was to be an easement, a fee on condition subsequent, or a fee simple. The only evidence is that a "right of way" was to be conveyed to the railway company. We think it is a reasonable inference from the testimony of Bliss and Ravlin that the

property would be selected at a later time and that a description would be prepared and incorporated in a deed and that such deed should convey a right of way to the railway company. The record stands uncontradicted that when a deed was presented Evans refused to execute it and the railway company made no effort to assert its alleged rights. Indeed, Evans' death did not occur until five or six years later, and the company took no initiative but was apparently content to use the land without further controversy with Evans or his heirs.

It is the well settled law of this State that an oral agreement for the conveyance of real estate, to be enforceable, must be clear and definite in its terms, free from doubt and suspicion and for a valuable consideration. As was said by this court in *Weir* v. *Weir*, 287 Ill. 495: "Such a contract, to be in force, must be certain and must be concluded,—that is, the parties must have 'agreed on the same terms and mutually signified their assent to them. If what passed between them was but treaty or negotiation, or an expectation of a contract, or an arrangement between them of an honorary nature, no specific performance can be had.' (*Tryce* v. *Dittus*, 199 Ill. 189.) The rule is settled in this State that a parol contract for the conveyance of real estate will not be specifically enforced in a court of equity unless it appears to be certain, definite and unequivocal in its terms; that to take it out of the Statute of Frauds on account of part performance all acts performed thereunder must be clear and definite and referable exclusively to the contract; that the proof upon which the conveyance is asked must be established so convincingly as to leave no reasonable doubt in the mind of the court."

Testing the proof adduced in the instant case by the rules laid down in the *Weir case,* it is obvious that it does not meet the requirements. The alleged agreement was not clear and definite either as to the description or as to the quantum of estate to be conveyed. The most that can be

claimed by appellee is that there was some agreement to convey a right of way over certain undefined lands, and even the existence of such an agreement is, we think, subject to serious doubt under the proof in this case.

But appellee insists this is not a suit to compel specific performance but to quiet title. One of the necessary elements to sustain a bill to quiet title is that the complainant must be the owner, either legal or equitable, of the title sought to be quieted. (*Glos* v. *Miller,* 213 Ill. 22; *Casstevens* v. *Casstevens,* 227 id. 547.) Appellee admits he is not the legal owner—he merely claims equitable ownership. But he cannot be the equitable owner unless he can show a valid and enforceable agreement by Evans to convey. As we have pointed out, he has failed to do this.

Appellee further urges he has ownership by virtue of seven years' possession and payment of taxes under color of title. He makes no such allegation in his bill, therefore proof or argument on this theory would be improper. However, the evidence fails to show either the possession or the payment of taxes claimed by him. On the contrary, it is clear appellant the Barber-Greene Company has been in the actual, physical occupation of the land claimed by it, since 1919, and that it has paid all taxes thereon since that time. As to the land claimed by appellant Arthur R. Evans, it appears from the stipulation in the record that he has paid all taxes thereon, excepting the right of way, since 1919. Appellee does not even show continuous possession of the right of way since acquiring title by the master's deed or that he has paid the taxes thereon. The railway company could acquire no title by limitation since its possession was obviously by permissive use. There is no presumption that the railway company's possession was hostile and adverse in its inception or that it continued to be after it was established. Possession by one other than the holder of the record title is presumed to be in subordination to the record title holder. (*New York Central Railroad Co.* v.

*Kinsella,* 324 Ill. 339.) Where one claiming under the Statute of Limitations has acquired possession in subserviency to the owner of the fee, a clear and positive assertion of an adverse right, definitely brought to the knowledge of such owner, must be shown before any foundation can be laid for the operation of the statute. (*Branch* v. *Central Trust Co.* 320 Ill. 432.) Appellee in the instant case has failed to show that the railway company at any time asserted a claim adverse to the title of the owner of the fee.

Although the record in this case is not clear, there is evidence tending to show that the railway company, because of foreclosure and receivership proceedings, has abandoned the operation of the railroad and its property has been sold to appellee, who is a scrap-iron dealer. The law in this State is well settled that a grant of right of way to a railroad company does not convey a fee in the land but conveys an easement, only. (*Branch* v. *Central Trust Co. supra.*) There was therefore an additional obligation on the part of appellee to show a definite and specific agreement that all of the property in the bill was to be conveyed to the railway company in fee simple, otherwise the abandonment of the right of way by the railway company for railroad purposes would re-invest the owner of the record title with absolute ownership.

It necessarily follows from what we have said that appellee has acquired no title, by limitation or otherwise.

Appellants argue a number of other points, all of which have considerable merit, but as the decree must be reversed we do not consider it necessary to discuss them.

For the reason stated the decree of the circuit court of Kane county is reversed and the cause remanded to that court, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*