THOMAS TALTY *et al.*, Plaintiffs-Appellants, *v.* COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

Third District   No. 75-254

Opinion filed May 6, 1976.

Hynds & Hynds, of Morris, and Albert H. Krusemark, of Joliet, for appellants.

Murphy, Timm, Lennon & Spesia, of Joliet (Ralph C. Murphy, of counsel), for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Owners of several parcels of real property join in this appeal from a summary judgment entered in favor of Commonwealth Edison in the Circuit Court of Will County. The disputed issue is whether Edison may convert an existing 220KV electric transmission line to a 345KV line and replace existing towers with new towers under easements granting Edison "a perpetual right to construct, operate, use and maintain electric transmission lines (including towers and necessary fixtures and wires and cables attached thereto) * * * for the transmission of electrical energy; such lines to form a part of an electric transmission system * * *"

The easement grants contained a limitation on the number of towers to be erected on each parcel "with not more than one-half of said number in each of two parallel rows, and with the towers of the second row, if and when installed, approximately opposite those of the row first installed." Additional provisions obligated the grantees to pay any damage to fences, crops and livestock arising from construction, use, and maintenance of the lines and also gave the grantors the oil and coal rights plus the right to agricultural use of the premises.

These easements were granted to the Super Power Company of Illinois, an Illinois corporation, between 1932 and 1937, pursuant to an order of the Illinois Commerce Commission which had given the Super Power

Company a certificate of convenience and necessity to erect one 220KV transmission line. In 1938 Super Power Company assigned its easement rights to Edison.

In 1940 Edison erected the first row of towers to support a 220KV line, and, in 1969, erected a second row to support a 345KV line. According to the evidence, after 1940, development and utilization of higher capacity generating units and transmission systems had progressed to the point that 345KV transmission lines became feasible for the first time. Now, as a result of the increased demand for electric power in the area supplied by Edison, new generating units are being constructed which must be served by transmission lines having an increased capacity. To provide this capacity, Edison proposes to replace the existing 220KV line with a second 345KV line.

The proposed towers for the new 345KV line will be nearly identical to those in the second row of towers erected in 1969, except that the new towers will average 16 feet higher and the crossarms 8 feet higher. All 345KV line towers have two crossarms, instead of one on the 220KV line, and have a greater clearance for the lowest crossarms and lines than the 220KV line towers. The new towers will be attached to the existing foundations except for two towers where the 30.3 feet square foundations will have to be removed and replaced by 45.4 by 20 feet rectangular foundations.

The trial court held that Edison had the right to convert the existing 220KV transmission line to a 345KV line under the terms of its easement grants. In reaching this conclusion, the court found that the easement grants were "unlimited grants to perpetually construct, operate, use and maintain electrical transmission lines over the grantors' properties," restricted only as to the number of towers in two parallel rows with no limitation as to voltages or size of towers, and that the construction of the first 220KV line did not limit the easements to a line of that capacity. The court also found the new 345KV line will not increase the burden on the servient estates or interfere with the agricultural use of the ground surface. The proposed conversion to a 345KV line was found to be merely an alteration of the instrumentality of the easements and within the purpose of the easement grants. The court expressly held that Edison is entitled to convert the 220KV line to a 345KV line in order to take advantage of the improvements of the age, modern inventions and developments in the art of electric transmission that were not possible at the time the easement grants were given.

The property owners contend that the original grants of easement for the purpose of *constructing* power lines and towers did not encompass later removal and *reconstruction* of new towers and that the proposed replacement of the 220KV line with a 345KV line imposes an

unreasonable burden on the servient estate and one not contemplated by the original parties to the easement grant. We believe these arguments are not persuasive.

■■ First, after carefully examining the record, we find ample support for the trial court's conclusion that the proposed replacement line and towers will not increase the burden on the underlying estate and will not interfere with the agricultural use of the premises. Damages resulting from the construction work itself have been paid in each case except for the case of plaintiffs Talty where the amount of damages is being litigated. The facts of this case are similar to those in *Weaver v. Natural Gas Pipeline Co. of America* (1963), 27 Ill. 2d 48, 188 N.E.2d 18, where an existing 4-inch gas pipeline was replaced with a 10-inch line, and no increased burden on the servient estate was found.
was replaced with a 10-inch line, and no increased burden on the servient estate was found.

■■ Second, although the grants of easement did not contain words such as "reconstruct" or "renew," they did grant "a *perpetual* right to construct, operate, use and maintain" transmission lines. (Emphasis added.) We believe logic alone would justify the finding by the trial court that this was an unlimited grant. Certainly the initial use (construction of a 220KV line) does not indicate any intention to limit the easement to lines of that size since there was no ambiguity in the grant itself. (*Weaver v. Natural Gas Pipeline Co. of America.*) There was no limitation in the easement on the size or the number of the electric transmission lines to be installed which was not difficult to do if the parties had any such intention. Furthermore, we think it noteworthy that these same property owners in 1969 acquiesced in the construction of a 345KV line as the second line permitted to Edison under the easement grants.

■■ Third, Illinois courts have long recognized that a "right of way is one including the right of improving, from time to time, according to the improvements of the age." (*Heuer v. Webster* (1st Dist. 1914), 187 Ill. App. 273, 278; *Diller v. St. Louis, Springfield & Peoria R.R.* (1922), 304 Ill. 373, 136 N.E. 703. See also Annot., 3 A.L.R.3d 1256, §9(a) (1965).) Edison clearly established the need to modernize its transmission system by replacing the 220KV line installed in 1940 with a larger capacity line utilizing improved development in the power transmission field, in order to meet the increased public demands for electric power.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

ALLOY, P. J., and STOUDER, J., concur.