CLARA SCHNABEL *et al.*, Plaintiffs-Appellants, *v.* THE COUNTY OF DU PAGE *et al.*, Defendants-Appellees.—(ILLINOIS PRAIRIE PATH, INC., Intervenor-Appellee.)

Second District. No. 80-776

Opinion filed November 12, 1981.

John G. Plain, of Aurora, for appellants.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Walter P. Maksym, Jr., and Richard Hattendorf, Assistant State's Attorneys, of counsel), for appellees.

Mr. JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs brought this action to quiet title and set aside a deed to property conveyed by quitclaim deed to the defendant, County of Du Page. Both parties moved for summary judgment and stated that there was no genuine issue as to any material fact. On June 6, 1979, the trial court entered an order denying the plaintiffs' motion for summary judgment and granting the county's cross-motion for summary judgment. Subsequently, the trial court denied the plaintiffs' motion to reconsider, which sought to vacate the court's order of June 6. The plaintiffs brought this appeal against both the county and the Illinois Prairie Path, Inc., which was permitted to intervene during the course of proceedings below upon petition and over the objection of the plaintiffs.

On appeal plaintiffs raise these issues: (1) that there were genuine issues of material fact which precluded granting the county's motion for summary judgment; (2) that the trial court should have granted plaintiffs' motion for summary judgment; and (3) that the trial court abused its discretion in allowing Prairie Path to intervene.

The material factual allegations in the pleadings, supporting affidavits, and other documents filed in support of and in opposition to the motions for summary judgment reveal the following events underlying

the present cause. In 1901, the plaintiffs' predecessors in title granted by deed to the Aurora, Elgin and Chicago Railway Co. (A, E & C) a portion or strip of their land for use by the A, E & C as a right of way "for the purpose of constructing a railroad, and for all purposes connected with the construction and use of a railroad." The two deeds in question further stated that the railroad, its successors and assigns, were to hold the land described "for all uses and purposes, or in any way connected with the construction, preservation, occupation and enjoyment of a railroad." Thereafter, a railroad was constructed and was in continuous operation until about the year 1960. A certified order of the Illinois Commerce Commission (ICC), dated July 6, 1961, indicates that between 1955 and 1959 the Aurora, Elgin and Chicago Railway Co. (subsequently reorganized as the Aurora, Elgin and Chicago Railroad Corp.) applied to the ICC for permission to abandon its passenger and freight transportation services. The order also states that the ICC authorized the railroad to abandon permanently all transportation services effective on July 6, 1961, and further authorized the railroad to remove, sell, or otherwise dispose of its property, equipment, and facilities.

By the year 1965, the A, E & C had torn up and removed all the rails and wires necessary for and previously used by the A, E & C in operating its line for railroad purposes. In a quitclaim deed dated July 19, 1965, the A, E & C conveyed to the County of Du Page (county) all its interest in land previously granted to it as a right-of-way. The county leased this right-of-way to the Illinois Prairie Path, Inc. (Prairie Path) in an agreement dated December 18, 1973. This agreement was not filed in the recorder's office of Du Page County. In this agreement the Prairie Path agreed to establish and maintain the right-of-way as a prairie path or nature trail between May 1, 1973, and April 30, 1983. The Prairie Path acknowledged that the Commonwealth Edison Company, the Illinois Bell Telephone Company, the Northern Illinois Gas Company and the Du Page County Highway Department also had easement rights in the subject property.

The plaintiffs, in support of their motion for summary judgment, filed affidavits by Leo Poss, one of the plaintiffs herein. In the affidavits, Poss stated that for more than 25 years he had resided on a farm immediately west of the land conveyed to the railroad as a right-of-way; that his daily observations had revealed that, ever since the railroad removed its rails, wires and other items formerly used in the operation of the railroad from the land, the premises have been unimproved and unoccupied; that the right-of-way became practically impenetrable as a result of being overgrown with small trees and underbrush; that for the past 10 years the right-of-way has not been used by any person or entity, except Commonwealth Edison Co., which bulldozed part of the right-of-way to obtain access to its power lines; and that there has never been a

path or anything resembling a nature trail through or upon the right-of-way. Plaintiffs also allege that they have paid all real estate taxes levied against part of the subject property.

In opposition to the plaintiff's motion for summary judgment, the county introduced an affidavit of Thomas Merrion, the right-of-way agent and an employee of the highway department of Du Page County. Merrion stated that he had custody and charge of the official records and documents of the department pertaining to the subject railroad right-of-way. He also stated that on July 19, 1965, the county purchased from the railroad for the sum of $500,000 that portion of the railroad's right-of-way which extended through Du Page County, including the property which is the subject of the present litigation; that the county and the Prairie Path negotiated and discussed alternative uses for the railroad right-of-way as early as July of 1965; that the county reached a preliminary agreement with the Prairie Path on May 10, 1966, to allow the Prairie Path to use the railroad's former right-of-way, including the subject property; and that from 1966 until 1978 the Prairie Path had operated an outdoor recreational nature trail on the former right-of-way, including the subject property, pursuant to a lease executed by the county and the Prairie Path. However, the county in other documents filed in this case admitted that the "plaintiff correctly alleged that the property which is the subject of this suit is not on the 'Prairie Path'." The A, E & C right-of-way forked at a point east of the subject property. The Prairie Path follows the south branch, whereas plaintiff's property is located on the north branch, known as the Batavia Branch. However, the county still maintains that the A, E & C conveyed its entire right-of-way, including plaintiffs' property to the county.

The Prairie Path, in opposition to plaintiffs' motion for summary judgment, submitted an affidavit of its president, Paul Mooring. Mooring stated that members of his organization and the public in general have used the former railroad right-of-way, described by the plaintiffs, as a nature trail as is evidenced by certain nature walks conducted in 1971. He also stated that the Prairie Path has a contractual agreement or lease with the county whereby the Prairie Path is authorized to develop and use from 1973 to 1983 the subject right-of-way as a prairie path or nature trail and as part of its nature trail system; that the Prairie Path has taken affirmative steps to develop a nature trail on the subject portion of the railroad's former right-of-way; and that the right-of-way in question has been used as a nature trail during the last 10 years.

On appeal, the plaintiffs claim that the county is not entitled to summary judgment as a matter of law. The plaintiffs allege that since the right-of-way was abandoned, they are entitled to reclaim its use since an easement in gross cannot be assigned, being personal in nature. They

claim that even if the easement is a commercial easement, and could be assigned, that it must still be used for railroad purposes. Plaintiffs alternatively claim that this is not a matter which can be settled by summary judgment since the question of abandonment, a material issue of fact here, is a question of intention and therefore cannot be settled as a matter of law. Finally, plaintiffs claim that the trial court abused its discretion by allowing the Prairie Path to intervene.

Both the county and the Prairie Path contend that the A, E & C right-of-way was assignable and alienable and that A, E & C did not abandon the right-of-way. They also claim that the present use of the right-of-way as a prairie path or nature trail is less objectionable than use as a railroad and therefore should be permitted. They contend that the present use is continuing to benefit the public and is still for transportation. The county and the Prairie Path also argue, based on the doctrine of invited error and estoppel, that the plaintiffs cannot now claim that the question of abandonment is a material question of fact since they themselves moved for summary judgment. Both the county and the Prairie Path claim that the Prairie Path had a right to intervene as it holds a leasehold interest in the subject property.

In its order denying the plaintiffs' motion for summary judgment and granting the county's cross-motion for summary judgment, the trial court determined that the right-of-way easement which the railroad had obtained from the plaintiffs' predecessors in title was an easement in gross of a commercial nature and, as such, was assignable to the county; that even though the easement was conveyed to the county for a purpose other than railroad purposes, such an assignment did not constitute an abandonment where, as here, the county's proposed use is of a public nature which will greatly benefit the public and will not impose an added burden or detriment upon the servient estates of the plaintiffs; and that the Prairie Path serves a common good and an interruption of its nature trail network would result in a serious detriment to the general public.

Plaintiffs first contend that the issue of abandonment was a question of fact and that the trial court could not grant summary judgment for the county under the pleadings and affidavits filed. The county and Prairie Path counter that plaintiffs are barred from asserting the alleged existence of a material fact by the twin doctrines of invited error and estoppel as most recently enunciated by our supreme court in *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 419 N.E.2d 350. The essence of this contention is that since the plaintiffs stated in their motion for summary judgment that no genuine issue of material fact existed, they cannot now, on appeal, claim that the issue of abandonment was a material fact and therefore the disposition of this case by way of summary judgment was improper. While we tend to disagree that this case comes within the rule applied

under the facts in *Catalano v. Pechous* and do not believe the mere filing of cross-motions for summary judgment invokes this doctrine (see *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 199, 380 N.E.2d 1040), we need not decide that issue as we believe the pleadings and affidavits do not contain disputed material facts regarding the issue of abandonment. While there are disputed facts as to the subsequent use of the property by Prairie Path, these are not pertinent to the abandonment issue and arise subsequent to the 1965 conveyance of the property to the county by A, E & C. Accordingly, we address the legal concepts of the alienability of a railroad right-of-way and its abandonment as it relates to the facts of this case.

■■ ■ It is well established that a right-of-way granted to a railroad creates an easement, and the easement terminates upon abandonment of its use. (*Branch v. Central Trust Co.* (1926), 320 Ill. 432, 440-43, 151 N.E. 284; *Chicago & Eastern Illinois R.R. Co. v. Clapp* (1903), 201 Ill. 418, 424, 66 N.E. 223; *People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 996, 373 N.E.2d 471.) The abandonment by the railroad of the right-of-way for railroad purposes revests the owner of the record title with absolute ownership of the land upon which the right-of-way had existed. (*Joseph v. Evans* (1929), 338 Ill. 11, 20, 170 N.E. 10; *Branch v. Central Trust Co.*, at 443.) Abandonment has been defined as the voluntary relinquishment or giving up with the intention of never again claiming one's rights or interest. (*Illinois Central R.R. Co. v. Illinois Commerce Com.* (1947), 398 Ill. 19, 24, 75 N.E.2d 23.) Thus, in order to establish that a railroad has abandoned its right-of-way easement, it is necessary to prove actual relinquishment and the intention to abandon the use of the premises. (*Abens v. Chicago, Burlington & Quincy R.R. Co.* (1944), 388 Ill. 261, 269, 57 N.E.2d 883; *Golconda Northern Ry. v. Gulf Lines Connecting R.R.* (1914), 265 Ill. 194, 206, 106 N.E. 818; *Department of Public Works & Buildings v. Schmauss* (1972), 6 Ill. App. 3d 470, 472, 285 N.E.2d 628.) Since the element of intent is seldom capable of direct proof, the issue in most cases is limited to the question of what factors or circumstances are sufficient to warrant an inference that there existed an intent to abandon. It has been stated that since abandonment means the relinquishment of the property with the intention of abandoning it, that involves a factual determination for the jury. (*Bell v. Mattoon Waterworks & Reservoir Co.* (1910), 245 Ill. 544, 549, 92 N.E. 352.) Furthermore, mere nonuse for a fixed period is not of itself sufficient to establish an abandonment. (*National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 176, 383 N.E.2d 919.) Abandonment occurs, however, when nonuse is accompanied by acts which manifest an intention to abandon and which destroy either the object for which the easement was established or the means of its enjoyment. (*Chicago & Eastern Illinois R.R. Co. v.*

*Clapp.*) It has also been held that under its grant to use the property for railroad purposes, "the company may make any use of the land which, directly or indirectly, contributes to the safe, economical and efficient operation of the road \* \* \*." *Mitchell v. Illinois Central R.R. Co.* (1943), 384 Ill. 258, 264, 51 N.E.2d 271.

■■ The railroad right-of-way abandonment cases fall into two categories: (1) those in which the interest of the railroad company was originally acquired by deed or conveyance and (2) those in which the railroad originally acquired its right-of-way easement through condemnation or eminent domain proceedings. (*E.g., Chicago & Eastern Illinois R.R. Co. v. Clapp* (1903), 201 Ill. 418, 66 N.E. 223.) In some cases, where land in the form of a right-of-way has been conveyed to a railroad under deed, by the terms of the conveyance itself, the grant was to be forfeited and the land encumbered by the easement to revert to the grantor in the event of an abandonment of the land for railroad purposes. (See, *e.g., Branch v. Central Trust Co.* (1926), 320 Ill. 432, 435, 151 N.E. 284; *Latham v. Illinois Central R.R. Co.* (1911), 253 Ill. 93, 96-98, 97 N.E. 254.) However, the same rule of extinguishment of the easement and reversion to the owner of the soil encumbered by the right-of-way easement holds in cases where the railroad has abandoned its right-of-way for railroad purposes. The Prairie Path argues that, in order for the plaintiffs to regain use of the right-of-way, the grant must expressly contain a reverter or right of re-entry clause. Such a clause is not necessary where the grant, as here, is construed to amount to only an easement. (*Branch v. Central Trust Co.,* at 444.) The easement expires by its own limitation when the land is no longer used for a railroad right-of-way. *Chicago & Eastern Illinois R.R. Co. v. Clapp,* at 425.

Abandonment has been found to exist where no repairs were made on the railroad tracks, the rails rusted, the ties rotted, the road was overgrown with weeds, and the railroad conveyed part of the easement to a private person who used the depot as a residence (*Branch v. Central Trust Co.* (1926), 320 Ill. 432, 436, 443, 151 N.E. 284); where the railroad took up the rails and ties, removed the cattle guards and the signs at the crossings and used the rails and ties in the construction of another line (*Chicago & Eastern Illinois R.R. Co. v. Clapp* (1903), 201 Ill. 418, 426-28, 66 N.E. 223); where the railroad had obtained land to construct a depot and failed to do so in accordance with the grant (*Lyman v. Suburban R.R. Co.* (1901), 190 Ill. 320, 323-24, 60 N.E. 515).

In other jurisdictions, authorization from a regulatory agency of the government to a railroad company to abandon operations as a public carrier has been found to be a factor indicating that the railroad abandoned its right-of-way easement. (*Lake Merced Golf & Country Club v. Ocean Shore R.R. Co.* (1962), 206 Cal. App. 2d 421, 23 Cal. Rptr.

881; *Faus v. Pacific Electric Ry. Co.* (1956), 146 Cal. App. 2d 370, 303 P.2d 814; *City Motel, Inc. v. State Department of Highways* (1959), 75 Nev. 137, 336 P.2d 375; Annot., 95 A.L.R.2d 468, 490-91 (1964); see *Grover v. Sharp & Fellows Contracting Co.* (1947), 82 Cal. App. 2d 515, 186 P.2d 682. But see *Ocean Shore R.R. Co. v. Spring Valley Water Co.* (1927), 87 Cal. App. 188, 262 P. 53.) In *Lake Merced Golf & Country Club v. Ocean Shore R.R. Co.*, the court determined that the railroad had abandoned its right-of-way for railroad purposes where the company, after applying to the appropriate governmental agencies for permission to abandon operations as a public carrier and after receiving such authorization, removed its tracks and ties, sold its rolling stock, equipment and terminal facilities, allowed others to use the right-of-way and sold portions of it, and distributed its assets to its stockholders. (206 Cal. App. 2d 421, 425, 437-38, 23 Cal. Rptr. 881, 883, 890-91.) Similarly, in *City Motel, Inc. v. State Department of Highways*, the court concluded that the railroad had abandoned its right-of-way easement where it removed its tracks pursuant to authorization from the appropriate governmental regulatory agencies, ceased operations as a railroad over the land in question, and thereafter conveyed the right-of-way to the State for use as a public highway and not for railroad purposes. (75 Nev. 137, 143-44, 336 P.2d 375, 378-79.) In Illinois, a railroad shall not dispose of its right-of-way without first having secured the approval of the Illinois Commerce Commission. Ill. Rev. Stat. 1979, ch. 111 2/3, par. 27; *National Bank v. Norfolk & Western Ry. Co.* (1978), 73 Ill. 2d 160, 176, 383 N.E.2d 919.

The principles governing an appellate court's review of a trial court's disposition of motions for summary judgment are well settled. It is axiomatic that summary judgment is proper when the pleadings, together with the depositions, affidavits, and other material filed in support of and in opposition to the motion, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (*Century Display Manufacturing Corp. v. D.R. Wager Construction Co.* (1977), 46 Ill. App. 3d 643, 360 N.E.2d 1346, *aff'd in part & rev'd in part on other grounds* (1978), 71 Ill. 2d 428, 434-35, 376 N.E.2d 993; *Meakens v. City of Chicago* (1980), 86 Ill. App. 3d 60, 62, 407 N.E.2d 893.) The purpose of a summary judgment proceeding is not to try an issue of fact but rather to determine whether there is an issue of fact to be tried, and a reviewing court will reverse an order granting summary judgment if it is determined that a question of material fact exists. (*Cato v. Thompson* (1980), 83 Ill. App. 3d 321, 323, 403 N.E.2d 1239.) Summary judgment provides a means of disposing of cases with dispatch, but is a drastic method which should be allowed only when the party's right to it is clear and free from doubt. (*Cato v. Thompson.*) Because different inferences may be drawn from undisputed facts, summary judgment should be

allowed only where reasonable men cannot draw different inferences from the undisputed facts. *Blaylock v. Country Mutual Insurance Co.* (1980), 85 Ill. App. 3d 1042, 1044, 407 N.E.2d 849; *Schierer v. Ameritex Division, United Merchants & Manufacturers, Inc.* (1980), 81 Ill. App. 3d 90, 92, 400 N.E.2d 1072.

The pleadings, affidavits, and other supporting material presented to the court in the summary judgment proceeding below do not contain disputed material facts regarding the events leading up to and including the A, E & C's conveyance to the county in 1965 of its railroad right-of-way. Any disputed facts which postdate the 1965 conveyance are not pertinent to the issue of whether the A, E & C had abandoned its easement when it attempted the conveyance to the county since any abandonment had already been accomplished. Based on the fact that the A, E & C no longer exists as a railroad concern, the undisputed facts here are susceptible of only one inference, the railroad intended to and did indeed abandon its right-of-way. This is supported by the A, E & C's application to the Illinois Commerce Commission for permission to abandon all transportation services, the ICC's subsequent permission to do so, and the ICC authorization to remove and sell its railroad equipment and property. The A, E & C did tear up and remove all its rails and wires used in connection with the operation of its railroad line and attempted to convey the right-of-way to the county for nonrailroad purposes. From these undisputed facts, it appears that the A, E & C abandoned its right-of-way as a matter of law.

In its order, the trial court stated "[t]hat while railroad easements would ordinarily be limited to the purpose for which they are created so that an assignment for any other use would constitute abandonment, the facts of the case at bar are distinguishable because of the public character of the proposed use, a use which will not increase any burden on the estate." The court apparently recognized the normal rule of extinction of a railroad's right-of-way easement by abandonment and reversion to the grantor of the land encumbered by the right-of-way easement but carved out an exception on the basis that the nature trail system would benefit the general public and would not increase the burden on the servient estates of the plaintiffs. No court in Illinois has recognized such an exception to the normal rule of abandonment and denied return of the use of the encumbered property to the grantor, his heirs or assigns. See also *Pollnow v. State Department of Natural Resources* (1979), 88 Wis. 2d 350, 276 N.W.2d 738.

■■ The trial court's decision to uphold the conveyance from the railroad to the county was predicated, in part, upon its view that an easement in gross of a commercial character, such as the easement in question, is of a special and exclusive nature so as to make it assignable. An easement in

gross, as distinguished from being one appurtenant, is one that is not created to benefit or does not benefit the possessor of any tract of land in his use of it. (Simes, *The Assignability of Easements in Gross in American Law*, 22 Mich. L. Rev. 521, 522 (1924).) It belongs to the easement holder independent of his ownership or possession of any specific land. In other words, the privileges of use of an easement in gross are incidental to the ownership of the easement and are not dependent upon the possession of a dominant tenement. (*Willoughby v. Lawrence* (1886), 116 Ill. 11, 19, 4 N.E. 356; 5 Restatement of Property §454 (1944); 28 C.J.S. *Easements* §4, at 634-35 (1941).) While it is generally the rule that an easement in gross is personal to the grantee and is incapable of assignment (*Messenger v. Ritz* (1931), 345 Ill. 433, 436, 178 N.E. 38; *Waller v. Hildebrecht* (1920), 295 Ill. 116, 122, 123, 128 N.E. 807), Illinois has recognized that a railroad may alienate or sell its right-of-way to another railroad so long as the grantee railroad is occupying it for railroad purposes. *Golconda Northern Ry. v. Gulf Lines Connecting R.R. of Illinois* (1914), 265 Ill. 194, 206-07, 106 N.E. 818. (The case, however, does not expressly address the question whether an easement in gross is alienable.)

While the railroad's easement in gross, in appropriate circumstances, may be alienable, there is no support in Illinois case law for the court's conclusion that, since no greater burden was placed on the servient estates of the plaintiffs, the conveyance to the county was proper and consequently the right-of-way was not extinguished by abandonment. Although there is authority that an existing easement may be altered or expanded in certain circumstances where no increased burden is imposed upon the servient estate (*e.g., Weaver v. Natural Gas Pipeline Co. of America* (1963), 27 Ill. 2d 48, 50-51, 188 N.E.2d 18; *Diller v. St. Louis, Springfield & Peoria R.R.* (1922), 304 Ill. 373, 378, 136 N.E. 703; *Talty v. Commonwealth Edison Co.* (1976), 38 Ill. App. 3d 273, 276, 347 N.E.2d 74, accord, *Faus v. City of Los Angeles* (1967), 67 Cal. 2d 350, 431 P.2d 849, 62 Cal. Rptr. 193), those cases did not address the question of abandonment of the easement nor constitute use completely different from easement granted and are clearly distinguishable on their facts.

It is also contended on appeal that the trial court's grant of summary judgment for the county can be justified, although not ruled upon by the trial judge, on the basis of laches and the statute of limitations as set forth as affirmative defenses by both the county and Prairie Path. We disagree, and find as a matter of law that these contentions must be resolved in favor of the plaintiffs. As we stated earlier, where the grant amounts only to an easement, no express reverter or right of re-entry clause is necessary to revest the owner of the record title with absolute ownership. (*Branch v. Central Trust Co.* (1926), 320 Ill. 432, 440-43, 151 N.E.2d 284.) Therefore, Prairie Path's contention that the statute of limitations for recovery of land

for breach of condition subsequent and termination of estate upon limitation (Ill. Rev. Stat. 1979, ch. 83, par. 1) bars plaintiffs' suit is clearly inapplicable here. (See *Tallman v. Eastern Illinois & Peoria R.R. Co.* (1942), 379 Ill. 441, 41 N.E.2d 537; *Pure Oil Co. v. Miller-McFarland Drilling Co.* (1941), 376 Ill. 486, 34 N.E.2d 854.) Nor is the equitable doctrine of laches available here. The failure to assert a right combined with the lapse of time and resulting prejudice to the opposite party gives rise to the defense of laches. (*Rogers v. Barton* (1944), 386 Ill. 244, 253, 53 N.E.2d 862; *Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 180, 360 N.E.2d 785.) As the county and Prairie Path have failed to point out any basis supporting laches other than the plaintiffs' failure to file suit to quiet title any earlier, nor have they shown they were prejudiced thereby, that contention is legally insufficient under these circumstances.

■■ The court finds that the Aurora, Elgin & Chicago Railroad Co. abandoned its right-of-way as a matter of law when it applied to the Illinois Commerce Commission for permission to discontinue railroad services, received said permission, took up its rails and ties and attempted to convey the right-of-way to the County of Du Page. Though a railroad may in certain circumstances assign its right-of-way, it may not disenfranchise its use for railroad purposes. Therefore, the deed to the county was of no effect. The trial court should not have granted summary judgment for the county on these facts. As plaintiffs did move for summary judgment in the trial court, we can grant judgment in their favor in this court. (See *Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 3 Ill. App. 3d 379, 387, 279 N.E.2d 443.) Since the appellate court may make any order that ought to have been made in the trial court (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5)), we reverse the summary judgment in favor of the county and grant summary judgment for the plaintiffs.

We note that Prairie Path never filed its own motion for summary judgment. However, in the trial court and in this appeal, Prairie Path has asserted that its rights are dependent upon the underlying adjudication between the plaintiffs and the county and has briefed the issues and urged affirmance of the trial court judgment as if summary judgment had been granted in its favor. The effect of Prairie Path's actions before the trial court and before us have been to join in the county's motion for summary judgment, and we consider the Prairie Path to be so bound as a party in this appeal. Thus, we likewise reverse the trial court judgment and grant the plaintiffs' motion for summary judgment against the Prairie Path. This court need not determine plaintiffs' other contention that the trial court abused its discretion by allowing the Prairie Path to intervene since the case is reversed on other grounds. *Kaplan v. Keith* (1978), 60 Ill. App. 3d 804, 808, 377 N.E.2d 279.

For the foregoing reasons, the trial court judgment is reversed, and we grant plaintiffs' motions for summary judgment against both the county and Prairie Path.

Reversed.

NASH and LINDBERG, JJ., concur.