853 F.2d 145
 J. Paul PRESEAULT and Patricia Preseault, Petitioners,
v.
INTERSTATE COMMERCE COMMISSION and the United States of
America, Respondents.
State of Vermont, Agency of Transportation, and City of
Burlington, Vermont and Vermont Railway, Inc., Intervenors.
 No. 764, Docket 87-4117.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 22, 1988.
Decided Aug. 4, 1988.
 
 Richard E. Davis, Barre, Vt. (Richard E. Davis Associates, Inc., T. Christopher Green, of counsel), for petitioners.
 Louis Mackall, Washington, D.C. (Robert S. Burk, Gen. Counsel, I.C.C., Ellen D. Hansen, Associate Gen. Counsel, Roger J. Marzulla, Acting Asst. Atty. Gen., Jacques Gelin, Mark L. Pollot, Attys., Dept. of Justice, of counsel), for I.C.C. and U.S.
 John K. Dunleavy, Montpelier, Vt. (Jeffrey L. Amestoy, Atty. Gen., Vt. John T. Leddy, of counsel), for intervenors.
 Before FEINBERG, Chief Judge, PRATT, Circuit Judge, and JOSEPH M. McLAUGHLIN, District Judge for the Eastern District of New York, sitting by designation.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 Concerned about the disintegration of our national rail system due, in part, to abandonment of rail corridors, congress called for a study on establishing a "rail bank" consisting of selected abandoned railroad rights-of-way. Railroad Revitalization and Regulatory Reform Act of 1976, Sec. 809, P.L. 94-210, Title VIII, 90 Stat. 144 (codified as amended at 49 U.S.C. Sec. 10906 (1980)). One significant impediment to the preservation of rail corridors has been that much railroad right-of-way is held by easement only and, under the laws of some states, once rail service is discontinued such easements automatically expire and the rights-of-way revert to adjacent property owners.
 
 
 2
 To address this problem, congress enacted 16 U.S.C. Sec. 1247(d) as part of the 1983 Trails Act Amendments in order (1) to preserve for possible future railroad use rights-of-way that are not currently in service and (2) to allow interim use of the rail corridors as recreational trails. When a rail corridor is "rail banked" for future use and made available for interim use as a trail under this statute state property laws are preempted and any reversionary interest in the corridor does not vest, even though rail service is discontinued.
 
 
 3
 This case tests whether the statute, by so preempting state property law, works a taking without just compensation in violation of the fifth amendment of the United States Constitution.
 
 
 4
 I. Procedural Background.
 
 
 5
 Petitioners Paul and Patricia Preseault are Vermont landowners who claim to hold a reversionary interest in a railroad right-of-way adjacent to their land. Claiming that title to the right-of-way reverted to them in 1975, or earlier, when Vermont Railway discontinued rail service over that route, the petitioners, along with other adjacent land owners, sought a declaratory judgment from the Superior Court of Chittenden County that the easement had been abandoned and was extinguished. On review of the superior court's dismissal, the Vermont Supreme Court held that, because the railway had not been authorized by the Interstate Commerce Commission ("ICC") to abandon or discontinue service on any part of the railroad line, the railway was still under ICC jurisdiction and, thus, the state court lacked jurisdiction to make any determination regarding the issue of abandonment. Trustees of the Diocese of Vermont v. State, 145 Vt. 510, 496 A.2d 151 (Sup.Ct.1985).
 
 
 6
 The property owners next filed a petition with the ICC seeking a certificate of abandonment with respect to the rail line. Vermont responded that it holds title to the railroad right-of-way in fee simple or, in the alternative, that there would be no reversion while the right-of-way was still employed for a public purpose, even if the state's interest is an easement. In 1962 the state of Vermont acquired from the Rutland-Canadian Railway Company whatever interest Rutland had in the right-of-way and then leased the right-of-way to Vermont Railway, Inc., which operated a railroad across the land until about 1970. While the property owners' petition was still pending the State of Vermont and Vermont Railway, Inc., filed a notice seeking a "class exemption" for the abandonment or discontinuance of out-of-service lines under 49 C.F.R. 1152.50 and indicated Vermont's intention to enter into an interim trail use agreement with the City of Burlington pursuant to 16 U.S.C. Sec. 1247(d).
 
 
 7
 By a Notice of Exemption decided January 2, 1986, the ICC granted an exemption to the State of Vermont and Vermont Railway, Inc., allowing the railway to discontinue service over the North Burlington branch rail line between mile post 124.687 and mile post 122.910. The ICC also approved the agreement between the State of Vermont and the City of Burlington for interim trail use under 16 U.S.C. Sec. 1247(d), noting that the state did not seek to abandon any properties, but only to discontinue service. At the same time, the ICC dismissed the property owners' petition for a certificate of abandonment. This appeal followed.
 
 
 8
 Petitioners do not argue on appeal that the ICC incorrectly interpreted Sec. 1274(d),--indeed, they concede that the statute required the result that the ICC reached. Instead petitioners contend that the statute itself is unconstitutional. Therefore, we need not discuss the statutory question except to note that the ICC's interpretation and application of the statute, through its regulations and through its order in this case, are fully consistent with congress's expressed intent.
 
 
 9
 II. Jurisdiction.
 
 
 10
 We reject the argument advanced by the ICC that this court lacks jurisdiction over petitioners' facial challenge to the constitutionality of 16 U.S.C. Sec. 1247(d). Under 28 U.S.C. Sec. 2342
 
 
 11
 The Court of Appeals * * * has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of * * * (5) all rules, regulations, or final orders of the Interstate Commerce Commission made reviewable by Sec. 2321 of this title and all final orders of such Commission made reviewable under Sec. 11901(j)(2) of Title 49, United States Code.
 
 
 12
 This ICC order is reviewable under Sec. 2321 which provides:
 
 
 13
 Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation or order of the Interstate Commerce Commission shall be brought in the courts of appeals * * *.
 
 
 14
 No act of congress specifically provides for jurisdiction in the district courts to review ICC actions. Thus, this court clearly has exclusive jurisdiction to review the ICC's orders, rules, and regulations interpreting statutes, see National Wildlife Federation, et al. v. ICC, 850 F.2d 694 (D.C.Cir.1988); Washington State Department of Game v. ICC, 829 F.2d 877 (9th Cir.1987), and the ICC does not dispute this. Rather, the ICC argues that, because it cannot rule on the facial constitutionality of its own governing statutes, this court, in reviewing an ICC order, cannot consider petitioners' challenge to the constitutionality of 16 U.S.C. Sec. 1247(d), which is presented for the first time on this appeal. According to the ICC, while this court may consider challenges--including challenges on constitutional grounds--to the ICC's own regulations and rules, any challenge to the constitutionality of the statute may be brought only in the district court. As authority for this proposition, the ICC relies primarily on a dictum in a footnote in State of Texas v. United States and ICC, 730 F.2d 409, 419 n. 42 (5th Cir.1984), amended, 749 F.2d 1144, reh'g denied, 756 F.2d 882, cert. denied, 472 U.S. 1032, 105 S.Ct. 3513, 87 L.Ed.2d 642 (1985). Because petitioners' claim for review is exclusively based on challenges to the constitutionality of the statute, rather than on the ICC's interpretation of the statute, the ICC's position, if valid, would effectively prevent review of its order in this proceeding.
 
 
 15
 A party seeking judicial review of administrative action may, ordinarily, "draw in question the constitutionality" of the statute under which the agency acted. Fleming v. Nestor, 363 U.S. 603, 607, 80 S.Ct. 1367, 1370, 4 L.Ed.2d 1435 (1960). An order of the ICC based on the plain wording of a statute--even where the constitutionality of the statute is beyond the power of the ICC to adjudicate--is nonetheless a decision of the ICC for the purposes of judicial review, and the reviewing court may consider a constitutional challenge to the statute as it affects the validity of the order. Cf. Weinberger v. Salfi, 422 U.S. 749, 764, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975). Even where judicial review of agency decisions has been prohibited by statute, challenges to the constitutionality of the underlying statute have been permitted. See Johnson v. Robinson, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) (38 U.S.C. Sec. 211(a), which prohibits review of administrator's decisions, did not prohibit action which challenged the constitutionality of veterans' benefits legislation); Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) ("constitutional questions are obviously not suited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." Id. at 109, 97 S.Ct. at 986).
 
 
 16
 The ICC suggests that petitioners' facial challenge to the constitutionality of Sec. 1247(d) should be brought in a federal district court under 28 U.S.C. Secs. 1331 and 1337. Indeed, district courts do have jurisdiction to hear constitutional challenges to statutes where no administrative action has yet been taken. Public Utilities Comm'n of Cal. v. United States, 355 U.S. 534, 540, 78 S.Ct. 446, 450-51, 2 L.Ed.2d 470 (1958) (where challenging the constitutionality of a statute in an administrative procedure would be futile, "the administrative agency may be defied and judicial relief sought as the only effective way of protecting the asserted constitutional right."); see Glosemeyer, et al. v. Missouri-Kansas-Texas Railroad Co., et al., 685 F.Supp. 1108 (E.D.Mo.1988). But after the ICC has issued an order, as it has done here, exclusive jurisdiction lies in the circuit court to modify or rescind the order. Thus, if we were to disclaim jurisdiction over the constitutional challenge to the statute, petitioners might prevail on their constitutional challenge in a district court but would be unable to obtain relief from the ICC's order. Where, as here, the petitioners' constitutional challenge to the statute is the sole basis for their challenge to the ICC order, it would be nonsensical to require a bifurcated challenge, relegating the constitutional challenge to the statute to a district court that would be unable to formulate any meaningful remedy. See Railway Labor Executives' Association v. Staten Island Railroad Corp., 792 F.2d 7 (2d Cir.1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 978 (1987).
 
 
 17
 III. Petitioners' Constitutional Challenges.
 
 
 18
 Having determined that we may consider petitioners' constitutional challenges to the statute, even though they are raised here for the first time, we turn to the merits of their arguments.
 
 
 19
 1. Commerce Clause.
 
 
 20
 Petitioners argue that 16 U.S.C. Sec. 1247(d) is not a valid exercise of commerce clause power because it does not serve a rational, legal purpose. Petitioners contend (a) that congress's idea of a federal "rail bank" is an "utter fiction" because the ICC does not retain jurisdiction over the railway carrier and, therefore, cannot require the carrier to resume service over the route in the future; (b) that the true purpose of Sec. 1247(d) is merely to prevent reversion of the rights-of-way property owners after abandonment by the railway carrier; and (c) that congress's attempt to establish a rail bank is mere subterfuge for an attempt to take the rights-of-way for another public purpose--recreational trail use--without just compensation.
 
 
 21
 In determining whether an exercise of congressional power is valid under the commerce clause a court may consider only (1) whether there is any rational basis for a congressional finding that the regulated activity affects interstate commerce; and (2) whether "the means chosen by [congress are] reasonably adapted to the end permitted by the Constitution." Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 262, 85 S.Ct. 348, 360, 13 L.Ed.2d 258 (1964) quoted in Hodel v. Virginia Surface Min. & Reclam. Ass'n, 452 U.S. 264, 276, 101 S.Ct. 2352, 2360, 69 L.Ed.2d 1 (1981). Petitioners do not challenge congress's authority to regulate railroad abandonments or to set conditions on abandonment or discontinuance of service. Congress's authority to regulate the railroads is well recognized, Nat'l Railroad Passenger Corporation v. Atchison, Topeka and Santa Fe Railway Co., 470 U.S. 451, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985), as is its authority to regulate railroad abandonments, Hayfield Northern R. Co. v. Chicago & N.W. Transportation Co., 467 U.S. 622, 104 S.Ct. 2610, 81 L.Ed.2d 527 (1984). The challenged section of the Trails Act serves two purposes: (1) preserving rail corridors for future railroad use and (2) permitting public recreational use of trails. Both purposes are legitimate congressional goals under the commerce clause. The remaining question under commerce clause analysis is whether the means adopted by congress in 16 U.S.C. Sec. 1247(d) are reasonably adapted to these two purposes. Section 1247(d) enables railroads that wish to discontinue service to help preserve rights-of-way for future rail use, when they might otherwise seek to abandon a line; it protects the railroad from liability in the interim; and it provides for maintenance of the right-of-way by the trail user during the interim. This seems a remarkably efficient and sensible way to achieve both goals. We conclude that it constitutes a valid exercise of congress's authority under the commerce clause.
 
 
 22
 2. Takings Clause.
 
 
 23
 Petitioners also claim that 16 U.S.C. Sec. 1247(d) is unconstitutional on its face because it effects a taking without just compensation. According to them, by establishing the "rail bank" and approving interim use of this section of the corridor as a bicycle trail, the ICC has taken away petitioners' reversionary right to the property. Some railroad rights-of-way are owned by the railway carrier in fee simple, and the carrier may transfer the property or use it for a non-railroad purpose without restriction, except that it may not discontinue service over the route without ICC authorization. Other rights-of-way are specifically limited to railroad use and when the use is abandoned, unencumbered title reverts to the original owner. Petitioners claim to hold title to the land in dispute subject to an easement for railroad purposes. The State of Vermont continues to dispute petitioners' claim that they have some reversionary interest in the right-of-way; the state contends that its predecessor in interest, Rutland-Canadian Railway, obtained a fee interest in the land in the original condemnation proceedings in 1899. In view of our disposition below, however, that issue of state law does not yet have to be resolved.
 
 
 24
 State law generally determines what interest is retained by a property owner whose land is subject to a railroad right-of-way and what circumstances, if any, may trigger a reversion. See National Wildlife Federation, et al. v. ICC, at 701; Schnabel v. County of DuPage, 101 Ill.App.3d 553, 57 Ill.Dec. 121, 428 N.E.2d 671 (Ill.App.Ct.1981). However, state property law, where it concerns railroad rights-of-way, operates only subject to the ICC's plenary authority to regulate railroad abandonments. Chicago & North Western Transp. Co. v. Kalo Brick & Title Co., 450 U.S. 311, 320, 101 S.Ct. 1124, 1131-32, 67 L.Ed.2d 258 (1981).
 
 
 25
 Until the ICC issues a certificate of abandonment, the railway property remains subject to the ICC's jurisdiction, and state law may not cause a reverter of the property. The Vermont Supreme Court recognized this when it held that an action "brought in state court, seeking to dispose of the property under state law, * * * interferes with the [Interstate Commerce Act's] statutory scheme for regulating interstate commerce." Trustees of the Diocese of Vermont, 496 A.2d at 154.
 
 
 26
 The fifth amendment to the United States Constitution does not prohibit all acquisitions of private property, but requires that just compensation be paid whenever property is "taken" for a public purpose. First English Evangelical Lutheran Church v. Los Angeles Cty., --- U.S. ----, 107 S.Ct. 2378, 2385-86, 96 L.Ed.2d 250 (1987). Since congress's dual purposes of preserving abandoned railway corridors in a "rail bank" and using these corridors, in the meantime, as recreational trails, satisfy the "public purpose" requirement, just compensation would be required if the statute and ICC's action under it constituted a "taking".
 
 
 27
 In cases raising allegations of an unconstitutional taking of private property, the Supreme Court has consistently held that " 'ad hoc, factual inquiries' must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate evaluation relevant in the unique circumstances." Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987). "Petitioners thus face an uphill battle in making a facial attack on the Act as a taking." Id. In this case, however, we need not even address the facts regarding petitioners' claim to this specific property, because we hold that even if they had the reversionary interest they claim, the statute does not effect a "taking".
 
 
 28
 Petitioners claim that Sec. 1247(d), by permitting the ICC to issue a Certificate of Interim Trail Use to a carrier that has discontinued service and not to issue a Certificate of Abandonment, enables the ICC to "take" their property by indefinitely postponing the reversion of an interest that would otherwise vest under state law. See Lawson v. State of Washington, 107 Wash.2d 444, 730 P.2d 1308, 1315-16 (1986); see also National Wildlife Federation, at 850 F.2d 702. We disagree. The ICC has plenary and exclusive authority to determine whether it is appropriate under all the circumstances to allow a railway carrier to abandon a route, and if the ICC determines that abandonment is not appropriate, no reversionary interest can or would vest. Thus petitioners' reversionary interest, if any, is not postponed any more by the operation of Sec. 1247(d) than it could otherwise be affected by the ICC's continuing jurisdiction.
 
 
 29
 Preserving railway corridors for future railway use is a function that congress has recently delegated to the ICC, and it is, as discussed earlier, permissible under the commerce clause. For as long as it determines that the land will serve a "railroad purpose", the ICC retains jurisdiction over railroad rights-of-way; it does not matter whether that purpose is immediate or in the future. To distinguish between future railroad use and immediate railroad use would serve no purpose but to stifle congress's creative effort to exercise foresight by preserving existing corridors for the future railroad needs of our country.
 
 
 30
 We therefore hold that Sec. 1247(d) does not effect a taking.
 
 CONCLUSION
 
 31
 Section 1247(d) is a valid exercise of congressional authority under the commerce clause, and does not effect a taking under the fifth amendment. Therefore, the ICC's order is valid, and petitioners' request for review of the ICC's decision is denied.