792 F.2d 7
 122 L.R.R.M. (BNA) 2939, 104 Lab.Cas. P 11,947
 RAILWAY LABOR EXECUTIVES' ASSOCIATION, Plaintiff-Appellant,
v.
STATEN ISLAND RAILROAD CORPORATION and Staten Island Railway
Corporation, Defendants-Appellees,
Interstate Commerce Commission and United States of America,
Intervenors-Appellees.
 No. 336, Docket 85-7483.
 United States Court of Appeals, Second Circuit.
 Argued Dec. 9, 1985.
Decided May 22, 1986.
 
 John O'B. Clarke, Jr., Washington, D.C. (William G. Mahoney, William J. Birney, Kimberly A. Madigan, Highsaw & Mahoney, P.C., of counsel), for plaintiff-appellant.
 John J. Gallagher, Washington, D.C. (Ronald M. Johnson, Patricia A. Casey, Akin, Gump, Strauss, Hauer & Feld, Nicholas S. Yovanovic, of counsel), for defendant-appellee Staten Island Railroad Corp.
 William F. Sheehan, Washington, D.C. (Shea & Gardner, of counsel), for defendant-appellee Staten Island R. Corp.
 H. Glenn Scammel, Washington, D.C., Robert S. Burk, Gen. Counsel, Douglas H. Ginsburg, Asst. Atty. Gen., John J. McCarthy, Jr., Deputy Associate Gen. Counsel, and John J. Powers, III, Frederic W. Freilicher, attorneys, for intervenors-appellees ICC and United States of America.
 Before VAN GRAAFEILAND, NEWMAN and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 The Railway Labor Executives' Association ("RLEA")[1] appeals from a judgment of the United States District Court for the Eastern District of New York (Sifton, J.), dismissing for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), its complaint under the Railway Labor Act ("RLA"), 45 U.S.C. Secs. 151-164, arising from the sale of railroad track from the Staten Island Railroad Corporation ("SIRC") to the Staten Island Railway Corporation ("SIRY") under the abandonment/sale provisions of 49 U.S.C. Sec. 10905. The district court concluded that it could not fashion a remedy for RLEA's claims without impinging upon an order of the Interstate Commerce Commission ("ICC") approving and mandating the sale. Accordingly, because the authority to enjoin or modify an ICC order rests exclusively with this and other circuit courts, 28 U.S.C. Secs. 2321, 2342, the district court determined that it lacked jurisdiction over the action. We agree with the district court that dismissal of the complaint was proper but believe that this dismissal was more appropriately accomplished under Fed.R.Civ.P. 12(b)(6). We therefore modify the judgment of the district court to declare that the complaint is dismissed with prejudice under Rule 12(b)(6) and affirm the judgment as modified.
 
 I. BACKGROUND
 
 2
 At the time of the transaction at issue, SIRC, a wholly owned subsidiary of the Maryland and West Virginia Company, operated a rail system consisting of 31.16 miles of track and trackage rights running across Staten Island and into northern New Jersey. In December of 1984, SIRC filed an application to abandon its rail system pursuant to 49 U.S.C. Sec. 10903, claiming loss of profits and poor conditions of the lines as the bases for its decision.[2] Section 10903 provides that a rail carrier may abandon its rail lines "only if the [ICC] finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance." Id. Sec. 10903(a). SIRC's application requested that the ICC impose no labor protective conditions on the abandonment, since SIRC was attempting to abandon its entire line and therefore would no longer be in the business of providing rail service.
 
 
 3
 During the pendency of SIRC's application before the ICC, RLEA became concerned over the potential impact of an abandonment upon the rights, guaranteed by current collective bargaining agreements, of SIRC employees whom its member unions represented. Consequently, four member unions of the RLEA served "Section 6 notices" on SIRC, 45 U.S.C. Sec. 156. Section 6 of the RLA governs disagreements between carriers and employees over the formation of, or changes to, a collective bargaining agreement. It requires thirty days notice of proposed changes to a collective bargaining agreement and provides for negotiations between the carrier and union over such changes. Id. If no agreement is reached, either party may request mediation from the National Mediation Board, which in turn may suggest that the parties arbitrate the dispute. Id. If the parties do not agree to arbitration, a thirty-day cooling-off period is imposed for the parties to resort to various self-help measures. Id. Throughout the entire process, the RLA directs the parties to maintain the status quo.
 
 
 4
 Here, the unions' notices sought to amend their collective bargaining agreements to require SIRC to give them six-months advance notice of any abandonment of SIRC's rail system, and, if such an abandonment were to occur, for SIRC to impose labor protective conditions as set forth in Oregon Short Line Co.--Abandonment--Goshen, 360 I.C.C. 91 (1975),[3] upon all employees affected by the abandonment. Alternatively, if SIRC were to sell its lines to another party, the unions requested that SIRC require the purchaser to employ all those SIRC employees affected by the sale, to assume the unions' collective bargaining agreements with SIRC, and to apply labor protective conditions as set forth in New York Dock Railway v. United States, 609 F.2d 83 (2d Cir.1979),[4] to all such employees.
 
 
 5
 At the same time, RLEA strenuously opposed SIRC's request before the ICC for approval of its application without the imposition of labor protective conditions. In its formal comments to the ICC on the application, RLEA requested that the ICC impose labor protective conditions on SIRC pursuant to 49 U.S.C. Sec. 10903(b)(2), which mandates the imposition of such conditions upon all partial line abandonments. On February 1, 1985, the ICC issued a decision approving the abandonment application and the issuance to SIRC of a certificate of public convenience and necessity. In light of RLEA's comments and the requirements of section 10903(b)(2), however, the ICC imposed on SIRC Oregon Short Line conditions.
 
 
 6
 Within days of the ICC's approval of the application, the New York Susquehanna & Western Railway Corporation ("NYS & W"), on behalf of SIRY, its new subsidiary, made an offer to purchase SIRC's rail system under the provisions of 49 U.S.C. Sec. 10905. Section 10905, entitled "Offers of financial assistance to avoid abandonment and discontinuance," is a "forced sale" provision which attempts to preserve rail service over lines that otherwise would be abandoned. Under section 10905, within ten days of the publication of the ICC's decision on the abandonment, "any person may offer to pay the carrier a subsidy or offer to purchase the line." Id. Sec. 10905(c). The effective date of the abandonment certificate simultaneously is stayed pending a determination of the legitimacy of any offers. Id. Sec. 10904(c)(4). If within fifteen days after the publication an offeror is determined to be financially responsible and the offer statutorily satisfactory, the ICC is required to "postpone the issuance of a certificate" in order to give the parties an opportunity to negotiate a final sale. Id. Sec. 10905(d). If the parties are able to reach an agreement for the sale which ensures continued rail service on the line, "the Commission shall approve the transaction and dismiss the application for abandonment or discontinuance." Id. Sec. 10905(e). If, however, the parties are unable to reach an agreement, either party may request that the ICC fix a price for the sale, based upon the fair market value of the line. Id. Sec. 10905(f)(1). The ICC's decision then becomes binding on the parties unless the offeror withdraws its offer to purchase the line within ten days of the ICC's decision. Id. Sec. 10905(f)(2).
 
 
 7
 On February 20, 1985, the ICC issued a decision finding NYS & W's offer to be bona fide and NYS & W to be financially responsible under section 10905(d).[5] Accordingly, the ICC postponed the issuance of SIRC's abandonment certificate to give SIRC and NYS & W an opportunity to negotiate a sale. In mid-March 1985, SIRC, NYS & W and SIRY informed the ICC that they had reached an agreement for the sale of the track under section 10905 and requested final approval of the sale. The parties further requested that the ICC impose no labor protective conditions. RLEA opposed approval of the sale without the imposition of such conditions, arguing that the requirements of section 10903(b)(2) should be read to apply to the sale at issue.
 
 
 8
 On April 19, 1985, following the directive of section 10905(e), which requires the ICC to approve a sale and dismiss the application for abandonment of the line once an agreement between the purchasing and selling parties has been reached, the ICC authorized the sale to SIRY. In so doing, it tacitly declined to impose labor protective conditions on the sale, consistent with its prior view that the lack of any specific reference to such conditions within the text of section 10905 foreclosed the ICC from imposing them in such a sale. Illinois Central Gulf Railroad--Abandonment--in Alexander County, Illinois, 366 I.C.C. 911 (1983), aff'd sub nom. Simmons v. I.C.C., 760 F.2d 126 (7th Cir.1985), cert. denied, --- U.S.----, 106 S.Ct. 791, 88 L.Ed.2d 769 (1986). The ICC decision made no mention of the Section 6 notices or the RLA and noted that SIRC "must complete the sale so long as the buyer consummates." The Staten Island Railroad Corporation--Abandonment and Discontinuance of Service--In Richmond County, NY and Union County, NJ, Docket No. AB-231, at 1 (April 19, 1985) ("SIRC Abandonment ").
 
 
 9
 On the day the ICC served its decision, SIRC and SIRY consummated the sale, ignoring the outstanding Section 6 notices and the procedures governing such notices under the RLA. The next day, RLEA commenced this action, alleging that SIRC's sale of its rail system to SIRY without negotiated labor protective conditions and without adhering to the unions' Section 6 notices constituted a change in the existing rates of pay, rules or working conditions of its employees as embodied in the collective bargaining agreement, in violation of Section 2, First and Section 6 of the RLA, 45 U.S.C. Secs. 152 First, 156. In its complaint, RLEA sought declaratory and injunctive relief requiring SIRC and SIRY to negotiate the desired changes to the collective bargaining agreements and to require the carriers to comply with the status quo provisions of Section 6.
 
 
 10
 The district court dismissed the complaint on the ground that it lacked subject matter jurisdiction over the claims. Fed.R.Civ.P. 12(b)(1). It reasoned that no remedy could be granted to RLEA that would not impinge upon the ICC's order granting SIRC and SIRY approval for the final sale of the rail system. Because exclusive jurisdiction to review ICC orders rests with the federal courts of appeals, 28 U.S.C. Secs. 2321, 2342, the court noted that RLEA's claims constituted a collateral attack upon the ICC's order, unreviewable by the district court.
 
 
 11
 On appeal, RLEA asserts that its intention was not to collaterally attack the ICC order, but rather to force SIRC and SIRY to comply with the RLA and negotiate necessary changes in the collective bargaining agreements. Arguing that the agreements establish rights independent from those protective conditions which the ICC imposes upon carriers, RLEA contends that the injunctive relief requested would not impinge upon the ICC decision. In this regard, RLEA points out that the ICC did not mandate the sale of line in its order, but rather merely approved a potential sale. Once approval was obtained, RLEA asserts, either party could have declined to go forward with the transaction, either by SIRY withdrawing its offer or by SIRC withdrawing its abandonment application and continuing to operate its line.
 
 II. DISCUSSION
 
 12
 As a threshhold matter, we note that dismissal of RLEA's claims pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction, was inappropriate. The RLA specifies that a rail carrier has a duty to abide by negotiated collective bargaining agreements and to settle all disputes arising therefrom within the parameters of that statute. 45 U.S.C. Sec. 152, First. Disagreements relating to the formation of, or changes to, a collective bargaining agreement are deemed "major disputes" within the ambit of Section 6 procedures. Elgin, Joliet & Eastern Railway Company v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945). When a carrier violates such procedures, it is clear that a district court generally has jurisdiction to enjoin that carrier from further violations. The Detroit and Toledo Shore Line Railroad Company v. United Transportation Union, 396 U.S. 142, 90 S.Ct. 294, 24 L.Ed.2d 325 (1969). Consequently, we find the district court's classification of its basis for dismissal inconsistent with the provisions of the RLA.
 
 
 13
 This, however, does not end the inquiry. Once jurisdiction over RLEA's claims is found to exist, the issue then becomes what remedy could the district court provide, assuming RLEA's success on the merits. Such a remedy, regardless of the jurisdictional issue, may not act to modify or rescind the ICC's order concerning the sale. See 28 U.S.C. Secs. 2321, 2342. Because we agree with the district court that it could not formulate a meaningful remedy without impinging upon the ICC's order approving the sale in question, we hold that RLEA's claims should be dismissed under Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted.
 
 
 14
 An appellate court may affirm a district court's decision on any basis for which a sufficient record exists to permit findings of fact and conclusions of law. Heimbach v. Chu, 744 F.2d 11, 13 (2d Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 1842, 85 L.Ed.2d 141 (1985). Here, RLEA requested declaratory and injunctive relief to preserve the status quo pending negotiations between SIRC and the unions over the collective bargaining agreements. In effect, RLEA sought to stay the consummation of the sale to SIRY pending such negotiations and to require SIRC to continue operation of its line with its present employees.
 
 
 15
 Under no circumstances could this request be granted without recission or modification of the ICC's order. That order provided that SIRY was "authorized to acquire" the rail line and that SIRC's application to abandon its line would be "dismissed effective on consummation of the sale." SIRC Abandonment, at 2. It further provided that SIRC "must complete the sale so long as [SIRY] consummates." Id. at 1 (emphasis added). Accordingly, the order, as we read it, required SIRC to go forward with the sale, assuming SIRY's continued willingness. Once the parties consummated the sale, which was done prior to the commencement of this action, SIRC necessarily relinquished all authority to operate a rail system under the Interstate Commerce Act. For the district court to have reversed this process by enjoining SIRC to continue its rail service would have conflicted directly with the ICC's mandate.
 
 
 16
 We reject RLEA's assertion that the ICC order only authorized a potential sale rather than mandating its consummation. The ICC's order provided only SIRY the option of canceling the sale; if SIRY wished to consummate the sale, SIRC was bound to comply.[6] In addition, even if the order can be considered noncoercive, the fact of the matter is that the authorized sale was completed prior to the commencement of RLEA's action. If the district court were to require a return to the pre-sale status quo at this point, it nonetheless would be required to modify the ICC's directive giving SIRC and SIRY immediate authorization to consummate the sale. Such a remedy is unavailable in the district court.
 
 
 17
 We further reject RLEA's suggestion that the district court could have provided injunctive relief by ordering SIRC to maintain the employment status of its employees during negotiations while at the same time permitting the sale to stand. We agree with the district court that "[s]imply to order SIRC to continue paying the employees without furnishing rail services is not authorized under the RLA because the RLA's purpose is to provide for maintenance of the status quo only to ensure the continued furnishing of railroad services." Railway Labor Executives' Association v. Staten Island Railroad Corporation, No. 85-1532, slip op. at 12 (E.D.N.Y. May 21, 1985).
 
 III. CONCLUSION
 
 18
 For the reasons set forth above, the judgment dismissing RLEA's complaint is modified to declare that the dismissal is with prejudice, under Rule 12(b)(6), and, as modified, affirmed.
 
 
 
 [1]
 RLEA is an unincorporated association of the chief executive officers of twenty-one labor unions, representing virtually all railroad employees in the United States
 
 
 [2]
 For a more complete discussion of the issues surrounding SIRC's abandonment application, see Railway Labor Executives' Association v. I.C.C., 791 F.2d 994, (2d Cir. 1986)
 
 
 [3]
 Oregon Short Line conditions require the carrier, among other things, to pay wages to those employees who lose their jobs because of the abandonment for up to six years from the date of the abandonment
 
 
 [4]
 New York Dock conditions are similar to Oregon Short Line conditions. New York Dock conditions, however, are applied to both parties to the transaction, whereas Oregon Short Line conditions are imposed solely upon the abandoning party
 
 
 [5]
 The ICC actually approved only the sale of 16.68 miles of the SIRC system under Sec. 10905. This track represented the portion of the system owned by SIRC itself. The other 14.48 miles of the system was in the form of trackage rights over track owned by the Staten Island Rapid Transit Authority. The sale of the trackage rights under Sec. 10905 was disallowed by the ICC on the ground that trackage rights acquisitions were not an appropriate subject of a Sec. 10905 sale. The Staten Island Railroad Corporation--Abandonment and Discontinuance of Service--In Richmond County, NY and Union County, NJ, AB-231 (Feb. 20, 1985). The trackage rights later were sold to SIRY under the provisions of 49 U.S.C. Sec. 10901. See Railway Labor Executives' Association v. I.C.C., 791 F.2d 994, (2d Cir. 1986)
 
 
 [6]
 The ICC, as an intervenor in this action, takes the position that Sec. 10905 does not permit the seller to back out of the sale once the transaction has reached this stage. We agree. We find no support for RLEA's assertion that SIRC simply could withdraw its abandonment application and continue to operate its line. In the first place, the ICC would have to approve such a withdrawal--a very slight possibility considering its position before this court. In addition, nowhere in Sec. 10905 is there any provision for the abandoning party to withdraw its application at this stage