**Daniel BRUNO and Philip R. Herzig, Plaintiffs,**

**v.**

**William S. COOK, James H. Evans, William J. McDonald and Union Pacific Corporation, Defendants.**

**No. 86 Civ. 0835(PNL).**

United States District Court, S.D. New York.

May 14, 1987.

Bernstein Litowitz Berger & Grossman, New York City (Ronald Litowitz and Daniel L. Berger, of counsel), for plaintiffs.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City (John Collins and Leonard Joseph, of counsel), for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

This is an action for securities fraud brought pursuant to sections 10(b), 14(a) and 20 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78n(a), and 78t, as well as various state law claims. Plaintiffs, formerly Class A stockholders of the Western Pacific Railroad Company ("WesPac"), seek damages based upon alleged misrepresentations made by defendant Union Pacific Corp. in the process of its acquiring control of WesPac and subsequently merging with it. Defendants move to dismiss the complaint or, alternatively, for summary judgment. Plaintiffs cross-move for partial summary judgment on their state law claims. Defendants' motion is granted in part.

### Background

On January 23, 1980, Union Pacific began a tender offer for the Class A common stock of WesPac at $20 per share. The Offer to Purchase sent by Union Pacific explained that its acquisition of WesPac was subject to approval by the Interstate Commerce Commission ("ICC"). It also announced a merger agreement by which Union Pacific would acquire all non-tendered WesPac shares for $20 per share if the ICC gave approval. The Offer to Purchase advised WesPac shareholders that, if the ICC approved the merger, "dissenting shareholders may not have any appraisal rights" citing *Schwabacher v. United States*, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305 (1948). It went on to say, however, that "the Purchaser has agreed that in the event the Merger is consummated, it will not object if, holders of Shares not owned by the Purchaser seek the right to dissent and demand appraisal of their Shares under Delaware law."

Approximately 77% of the outstanding WesPac Class A common stock were tendered to Union Pacific, giving Union Pacific control over 87% of the outstanding shares. More than one hundred shareholders, holding 183,533 Class A shares, did not tender.

Shortly thereafter, Union Pacific and WesPac entered into a merger agreement and applied for ICC approval of the merger. On September 24, 1982, the ICC approved the merger agreement as "just and reasonable" to minority shareholders. Appeal was taken to the Court of Appeals which affirmed the ICC's finding. *In re Union Pacific—Control—Missouri Pacific; Western Pacific*, 366 I.C.C. 459, 642 (1982), *aff'd sub nom. Southern Pacific Transportation Co. v. I.C.C.*, 736 F.2d 708 (D.C.Cir.1984). WesPac then called a special shareholders meeting and sent its shareholders a merger Proxy Statement. The Proxy Statement again alluded to *Schwabacher* and the possible preemption of state appraisal rights. It then declared:

Nevertheless, Union Pacific has agreed that it will not object if holders of Class A Common Stock not owned by Union Pacific or its affiliates demand appraisal of their Class A Common Stock under Delaware law. However, there can be no assurance that a Delaware court will not, on its own initiative, determine that *Schwabacher* denies it jurisdiction over an appraisal proceeding commenced in connection with the Merger in which case each dissenting shareholder shall receive $20 per share in accordance with the agreement of merger.

The merger was approved at the May 24 special meeting, with plaintiffs voting to oppose.

In July, 1983, plaintiffs Bruno and Herzig commenced appraisal proceedings in Delaware Chancery Court. That proceeding was scheduled for trial in June 1985. On the eve of trial, however, WesPac wrote to the court advising it of possible preemption under *Schwabacher*, as well as of the agreement between the parties to the effect that Union Pacific would not object to appraisal. On August 9, 1985 the Chancery Court dismissed the proceeding for lack of subject matter jurisdiction. *Bruno v. Western Pacific Railroad Co.*, 498 A.2d 171 (Del.Ch.1985). This dismissal was affirmed by the Delaware Supreme Court.

Plaintiffs then filed this action, claiming that defendants made material misstatements in the Offer of Purchase and the Proxy Statement. The misstatements alleged are misrepresentations as to its intention not to object to appraisal and underestimation of the value of WesPac's land holdings. Defendants move to dismiss and for summary judgment.

*Discussion*

■ It is undisputed that this court has no jurisdiction to review decisions of the ICC. Any challenge to ICC's approval of the merger terms as just and reasonable must be brought, as they were in this case, to the Courts of Appeals. 28 U.S.C. §§ 2321, 2342(5); *Railway Labor Executives Assoc. v. Staten Island Railroad Corp.*, 792 F.2d 7, 11–12 (2d Cir.1986). It does not necessarily follow that all allega-

tions of this complaint must be dismissed. Although this court may not review the fairness of the merger agreement or the appropriateness of the $20 per share price, it does have independent jurisdiction to adjudicate claims of fraudulent misrepresentations made in connection with the purchase or sale of securities. Plaintiffs' contentions, if proved, could support a claim outside the scope of the ICC decision. The issue is whether either of plaintiffs' allegations of fraud make out a valid claim.

I.

■ Plaintiffs allege that in the proxy statement soliciting acceptance of the merger paying $20 for WesPac shares, Union Pacific fraudulently underestimated the value of WesPac's land holdings. Defendants argue convincingly that even if the allegation were true it could not support plaintiffs' cause of action. An understatement of WesPac's assets could induce a shareholder to tender his shares for too low a price. But since plaintiffs refused to tender their WesPac shares for $20, they cannot have relied on defendants understatement of WesPac's assets in deciding to hold out for a higher price.

Nor do plaintiffs show that the alleged misrepresentation caused them any injury. At the time of the allegedly fraudulent proxy statement, Union Pacific owned 87% of WesPac's stock. The approval of the merger was therefore a foregone conclusion. Even if Union Pacific fraudulently understated the value of WesPac's assets in soliciting approval of the merger at the $20 price, such understatement could not have affected the approval of the merger since Union Pacific, as 87% owner of WesPac, possessed the power to vote shareholder approval of the merger.

Without a showing of reliance and causation, plaintiffs cannot recover for defendant's fraud. *Bennett v. United States Trust Co.*, 770 F.2d 308, 313 (2d Cir.1986) ("In order to recover under section 10(b), a plaintiff must establish that the misrepresentation complained of caused the injury suffered."). Even the presumption of causation in a § 14(a) action based on a materi-

al misstatement in a proxy statement, *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1970), is of no avail to plaintiffs where, as here, their injury could not logically have been caused by the alleged fraud.

If plaintiffs had parted with their Wes-Pac stock for $20 based on a fraudulently low misstatement of the value of WesPac's assets, they could sustain a claim. If plaintiffs could show that Union Pacific had procured shareholder approval of the merger by a fraudulently low misstatement of the value of WesPac's assets, that also might sustain a claim, notwithstanding plaintiff's refusal to tender. But where the alleged misstatement neither affected the shareholder vote on the merger, nor caused plaintiff to enter into or forego a transaction, they cannot show a compensable injury. Plaintiff's allegations of fraud based upon the alleged underestimation of WesPac land values (¶¶ 34(d), 38(b), (c) & (d)) therefore must be dismissed.

■ As to plaintiffs' related claims that defendants withheld material information from the ICC which would have affected its determination of the fairness of the merger, those contentions were within the scope of the appeal from the ICC ruling and are outside the jurisdiction of this court and must also be dismissed.

■ The allegations (¶¶ 38(f) & (g)) that defendants omitted to disclose that Union Pacific would benefit financially from the merger or that it had not "obtained an opinion from an independent investment banker that the merger was fair from a financial point of view," do not state claims of fraudulent misrepresentation. The documents conveyed no implication to the contrary.

## II.

■ Plaintiffs also make claims based upon defendants' alleged misrepresentation of their intentions concerning the availability of appraisal rights. The allegation is that defendants fraudulently represented that they would not assert a jurisdictional defense to a Delaware appraisal action, but

then in fact did raise such a defense. Defendants contend they committed neither fraud nor breach of promise. They argue that their advice to the Delaware court of the *Schwabacher* precedent and of their agreement not to object was not inconsistent with their representation or undertaking. Defendants argue further that any representation they made is, in any event, moot since the parties could not cure a lack of subject matter jurisdiction by agreement.

I find, although the question is a close one, that defendants have not shown entitlement to summary judgment on this claim. If plaintiffs can show (i) that defendants deliberately and fraudulently led plaintiffs to believe mistakenly that defendants would not object to the Delaware court's entertainment of appraisal rights and that the Delaware court was therefore likely to entertain an appraisal proceeding, (ii) that plaintiffs, in reliance on that false representation and misperceived likelihood, refused the $20 offer, holding out for a better award on appraisal, (iii) that the Delaware court could not as a matter of law entertain an appraisal proceeding and dismissed the case when advised by defendants (in breach of their representation) of the *Schwabacher* precedent and (iv) that plaintiffs were thereby forced to accept $20 per share long after they might otherwise have accepted it, plaintiffs might theoretically show entitlement to their loss of interest in the intervening period, net of any dividends they may have received. As to these claims (¶¶ 34(a) & 38(a)), defendants' motion must be denied.

## III.

■ Plaintiffs cross-move for summary judgment on their state law claim for breach of contract. This claim is based on Union Pacific's alleged "unconditional agreement not to assert a lack of jurisdiction defense to the Delaware appraisal action." (¶ 42.) Defendants respond that they did not assert lack of jurisdiction, but merely brought the *Schwabacher* opinion to the court's attention, as was their "ethical duty."

Plaintiffs' papers do not demonstrate entitlement to relief. Plaintiffs' cross-motion for summary judgment is denied.

*Conclusion*

Defendants' motion to dismiss is granted as to plaintiffs' claims of fraudulent understatement of WesPac property values, and related claims (¶¶ 34(c) & (d) & 38(b)–(g)). In all other respects, defendants' motion is denied, as is plaintiffs' cross-motion.

SO ORDERED.